## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### GARBER v. BRESEE & SONS.

#### JANUARY 12, 1899.

#### Absent, Cardwell and Riely, JJ.

1. FALSE REPRESENTATIONS—*Opinions—Facts—Case at Bar—Insurance.*—
A contract procured by the false representation of an agent is not
voidable at the option of the party deceived, where it appears that the
representation was the mere expression of an opinion, and did not
amount to an engagement or undertaking that the fact was as repre-
sented. In the case at bar, the plaintiff in error was induced to take
out further insurance in a company on the representation of an agent
of the company that the company would pay him the cash surrender
value of a policy which he already held in the company. This repre-
sentation was the expression of an opinion, and not the statement of a
fact.

Error to a judgment of the Law and Equity Court of the
city of Richmond rendered April 12, 1897, in an action of
debt wherein the defendants in error were the plaintiffs, and
the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*H. C. Riely* and *B. B. Munford*, for the plaintiff in error.

*Thomason & Minor*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The defence relied on in this case is set out in a special plea,
of which the following is a copy:

"And the said defendant, by his attorney, comes and says that before the making of the said note in the declaration mentioned, to-wit, on the 12th day of June, 1895, this defendant, who had previously procured of the Mutual Life Insurance Company of New York, a policy, No. 575,495, on what was known as the ' continuous instalment plan,' went to the office of said plaintiffs, in the Chamber of Commerce building, in the city of Richmond, who were the agents of the said Mutual Life Insurance Company of New York, and in which' said office said plaintiffs performed their duties as said agents, with the view of procuring the cash surrender value of said policy; that while in said office, he was approached by one Frederick Weber, an agent of said Mutual Life Insurance Company of New York, and an agent of said plaintiffs, at their said office, and in the exercise of authority as such agent in said office, which said Weber solicited this defendant to take out another policy of insurance in the said Mutual Life Insurance Company of New York, known as the ' five *per cent.* debenture policy '; that this defendant informed said Weber that he could not afford to take out said policy, not being able to pay the premiums upon said plan of policy, and would not take it out unless this defendant could first obtain in cash the cash surrender value of the policy above referred to, which cash surrender value this defendant had been informed by an agent of said Mutual Life Insurance Company of New York amounted to several thousand dollars. The said Weber thereupon informed and assured this defendant that said company would pay the cash surrender value of this policy in cash if this defendant would take out the new policy above referred to; and, relying upon this representation and assurance which the said Weber made in the office of said plaintiffs in the city of Richmond aforesaid, and in the character as agent for both the plaintiffs and the company, as aforesaid, this defendant agreed then and there to take out a policy for $10,000, on the five *per cent.* debenture plan, in the said Mutual Life Insurance Company of New York,

and on the 12th day of June, 1895, executed his negotiable note to the said plaintiffs for the said sum of $694, the amount of the first premium on said last mentioned policy, which note was payable six months after date. And said defendant says that but for the representations and assurances made by said Weber, the agent of said company and of said plaintiffs, he would never have taken out said last mentioned policy or executed said note.

"And said defendant avers that, both by letter and in person, he requested and demanded a performance on the part of the said Mutual Life Insurance Company of New York of the contract made by their agents in their behalf, as aforesaid, and the payment of the cash surrender value of the aforesaid policy, but that said Mutual Life Insurance Company of New York has hitherto wholly failed and refused to pay in cash to this defendant the cash surrender value of the policy, or to in any respect comply with the said contract. And said defendant avers that in consequence of this failure on the part of said Mutual Life Insurance Company of New York to perform its contract, and pay the cash surrender value of said policy as aforesaid, this defendant thereupon informed said company that he would not pay the amount of the aforesaid note given for the first premium on said policy, and that said policy was surrendered and held by him subject to their order.

"And the defendant avers that, by reason of the premiums aforesaid, the said note of $694 upon which action was brought is null and void, and defendant is not bound to pay the same.

"All of which the said defendant is ready to verify."

This plea was objected to, but the court held it to be sufficient, and allowed it to be filed. In doing this it must have held that the representations and assurances of Weber, that the Insurance Company would pay the defendant the cash surrender value of policy No. 575,495, if he took out the new policy of insurance, amounted to an engagement or undertaking, and were not mere expressions of opinion as to what

the Insurance Company. would do; for, if this latter construction be put upon the plea, it did not set up a good defence, and the objection to it ought to have been sustained. *Watkins* v. *West Wytheville Land Co.*, 92 Va. 1.

Construing the plea as setting up such an engagement or undertaking, is the plea sustained by the evidence?

The defendant is the only witness as to what took place between Weber and himself. In his testimony, he states that he was in need of money, and went to the office of the plaintiffs, who were the agents of the Insurance Company in the city of Richmond, to see if he could get the cash surrender value of the policy of insurance which he then held in that company. Whilst in the office, he met Weber, who urged him to take out a policy of insurance upon the five *per cent.* debenture plan. He told Weber that he had a policy in the company, and was not able to take out any more insurance, but if he could get the cash surrender value of his policy he would feel like taking out a policy on that plan. "He (Weber) assured me there would be no trouble about getting the cash surrender value of it. I thought he knew what he was talking about, and I told him if there was no trouble about getting that, I would take out the policy; and I did take out that policy with this distinct understanding." * * * He further states that he never would have taken out the new policy but for Weber's assurance that he "could get the cash surrender value for the old one."

On cross-examination he testified: "I told Weber that I did not care to take out additional insurance, and, when he talked to me on that subject, I told him that I had a policy in the company, and if I could get the cash surrender value of that, I could probably be induced to take out the policy as he requested."

Again, when asked if the representations of Weber were all made at the time he took out the policy, he says: "I cannot recollect that. I never thought there would be any trouble

about it at all.   All I remember is that I wanted to get the cash surrender value on my policy, and he assured me there would be no trouble about doing it.   *   *   *   *   Weber said there would be no trouble in the world about my getting the cash surrender value; that was the inducement I had for taking it out."

There can be no doubt from the defendant's evidence that he was induced to take out the new policy of insurance by reason of the representations of Weber; but were they anything more than expressions of opinion on the part of Weber as to what the Insurance Company would do?   Weber had no authority to bind the Insurance Company to pay the cash surrender value of the old policy.   His language does not show that he intended to agree that his company would pay it; neither does the defendant seem to have so understood him, for he says that when Weber assured him that there would be no trouble about getting the cash surrender value of his old policy he "thought Weber knew what he was talking about."   If he had been under the impression that Weber was making a contract, or entering into an engagement, for his company by what he said, the defendant used very inappropriate language to express his meaning.   But if he understood that Weber was expressing an opinion as to what his company would do, upon which he (defendant) could rely, his language was peculiarly appropriate.

After a very careful consideration of all the evidence, and in the most favorable light for the defendant, as we were bound to consider it upon a demurrer to the evidence, and with a strong desire, if possible under the law (for this is a very hard case), to find in favor of the defendant, we have been unable to do so.

The judgment of the Circuit Court must be affirmed.

*Affirmed.*