# Staunton

## MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION v. PERRY E. ALLEY.

September 11, 1936.

Present, Campbell, C. J., and Hudgins, Gregory and Eggleston, JJ.

The opinion states the case.

*Apperson, Rush & Gentry*, for the plaintiff in error.

*John G. Challice* and *Charles B. Satchwell*, for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

Plaintiff, an engineer on the Norfolk & Western Railway, on August 29, 1931, applied for and received a health and accident insurance policy issued by defendant. He paid, in quarterly instalments, the premiums due on this policy until January, 1934. After the policy had lapsed, because of non-payment of premiums, he was induced to renew the insurance, and on April 18, 1934, on request of the local agent for defendant, he signed a blank application for the same or a similar policy. The agent wrote the answers to the questions in the application, and on April 23, 1934, a new policy was issued and delivered to plaintiff.

On May 20, 1934, plaintiff was badly injured by the derailment of an engine on which he was then working as a fireman. In due course he filed his claim for the payments provided in the policy. The claim was rejected, and this action instituted on the contract of insurance, which resulted in plaintiff's obtaining a verdict and judgment for $933. To that judgment defendant sought and obtained this writ of error.

The main defense relied upon to defeat recovery is based upon the falsity of the answers to certain questions set forth in the application for the insurance.

Before discussing the case on its merits we deem it advisable to dispose of a preliminary question not alluded to in the

briefs. The photostatic copy of the insurance policy contains what purports to be a copy of the application. During cross-examination of plaintiff, defendant introduced the original application dated April 18, 1934, containing the signature of the applicant. Question 12, and the answer thereto, in the original application is as follows: "Have you ever had any of the following diseases: Rheumatism, neuritis, arthritis, sciatica, epilepsy, appendicitis, diabetes, any kidney trouble, cystitis, any disease of the brain or nervous system, heart disease, tuberculosis, bronchitis, gall bladder trouble, any stomach trouble, any intestinal trouble, cancer, syphilis, high or low blood pressure, tonsilitis, rectal trouble, malaria? Name diseases, dates and length of disability. NO."

No such question or answer is found in the purported copy of the application attached to the policy. Plaintiff made no objection to the introduction of the original application as evidence, either in the trial court, or in this court. Defendant, for another purpose, invoked the provisions of Code, section 4315, which among other things provides that in the class of insurance contracts now under consideration, "no statement made by the applicant for insurance, which is not incorporated in or endorsed on the policy issued to such applicant *shall avoid the policy or be used in evidence,* and no provision of the charter, constitution or by-laws shall be used in defense of any claims arising under any such policy unless such provisions are incorporated in full in the policy." (Italics supplied.)

Notwithstanding the fact that plaintiff did not object to the introduction of the original application, it is our duty, in the light of the above quoted legislative mandate, to eliminate all statements in the original application not set out in the purported copy incorporated in the policy. In so holding we will consider, as a part of the evidence, all statements made in the original application which are set forth in the purported copy incorporated in the policy, without considering or determining the effect, if any, of defendant's failure to incorporate in the policy an exact copy of the original

application. This elimination restricts our consideration to the following questions and answers:

"10. Have you ever made claim for or received indemnity on account of any injury or illness? If so, what companies, dates, amounts and causes? No.

"13. Have you received medical or surgical treatment or had any local or constitutional disease not mentioned above, within the last five years? Answer as to each. No.

"Do you hereby apply to the MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION for a policy to be based upon the foregoing statements of facts and do you understand and agree that the falsity of any statement in this application shall bar the right to recover if such false statement is made with intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the Association, and do you agree to notify the Association promptly of any change in your occupation, or earnings, or if you take additional insurance, and do you hereby authorize any physician or other person who has attended or may attend you to disclose any information thus acquired? Yes."

Both parties concede that the local agent for defendant obtained plaintiff's signature on a printed form of an application, and wrote the answers to the question therein set forth after he had separated from plaintiff, and returned to his office.

It appears from the report of Dr. M. A. Johnson, Jr., a surgeon at the Lewis-Gale hospital in Roanoke, that plaintiff was examined by the medical staff of that hospital on February 6, 8, 15, and March 10, 1933, and that he had received definite medical advice and treatment within five years of the date of the application. Hence the answer given by the agent to question 13, as quoted above, is not in accord with the facts.

It also appeared from the evidence that plaintiff, from time to time beginning on January 10, 1922, and ending on July 8, 1928, had been paid the aggregate sum of $2,391.25 by the relief and pension department of the Norfolk & Western Railway Company, as indemnities for injuries and illness. At one

period, for 17 months, that is from January 1, 1927, to July 8, 1928, he had drawn indemnities from illness diagnosed as ulcerated · stomach. This evidence is uncontradicted, and clearly established that the answer to question 10, quoted above, was and is false.

While we have some difficulty in trying to follow the reasoning outlined in the plaintiff's brief, he, in effect, contends that while the answers to the above questions were untrue, he was not responsible therefor. The effect on a contract of insurance, of the agent's mistake in filling out the application, has been a fruitful source of litigation, and much printer's ink has been consumed on the subject by judges and text-writers. Judge Prentis, in dealing with the application for a fire insurance policy on an automobile, in *North River Ins. Co.* v. *Lewis*, 137 Va. 322, 327, 119 S. E. 43, 45, said: "There are many pertinent cases and they cannot be reconciled, but there seems to be little doubt that by the weight of authority, in the absence of deceit and fraud of the assured, where there is no application (and there was none here), or if the answers are written by the agent on his own knowledge or authority without questioning the applicant (as is the case here), the company is generally held estopped from relying upon a forfeiture, either because of the falsity of such answers as are written by its own agent, or because of the failure to answer questions material to the risk which have never been asked."

The false statements of the soliciting agent and the medical examiner in the application and report on the health of a convict, for a life insurance policy, sought by the father of the convict, were before the court in *Harrison* v. *Provident Relief Ass'n*, 141 Va. 659, 670, 675, 126 S. E. 696, 699, 40 A. L. R. 616. Judge Holt, after reviewing a number of cases dealing with the knowledge of the agent, as knowledge of the company, said: "In the light of this law we have no difficulty in reaching the conclusion that neither misstatements nor concealments on the part of this company's agents could affect the plaintiff unless he was in somewise respon-

sible therefor and that the evidence fails to show such responsibility."

In summarizing the conclusions of the court in that case this is said: "1. No conspiracy has been proven. 2. All misstatements made and all facts suppressed can be charged against the company's agents only. 3. Fraud as a defense cannot be set up after two years from the date of the policy. 4. The act of 1906 has no application to the facts in this case."

In *Mutual Benefit Health & Accident Ass'n* v. *Ratcliffe*, 163 Va. 325, 335, 175 S. E. 870, 874, the evidence disclosed that the applicant was a former insurance agent, and hence knew the importance of giving true answers to the questions set forth in the application; that the agent for the company was inexperienced and was not as well informed on such matters as the applicant. Speaking to the point the court said: "No agent has power to perpetrate a fraud upon his principal. If the applicant knows that there are misrepresentations in the answer as written and that they are material, there is fraud in the inducement when a policy is issued upon their faith. He cannot depend upon the power of the agent, in the language of the street, to put it over.

" 'Where the insured at the time of making the application, gives full, true and correct answers, relying upon the skill, honesty, and good faith of the company's agent to fill out the application correctly, and such agent makes out the application incorrectly or inserts answers different from those given, or false answers, the company cannot take advantage thereof, and where the applicant is ignorant of the discrepancy or wrongful act of the agent he is entitled to recover on the policy, and this rule applies even though the agent in such case has transcended his actual authority.' 2 Joyce on Insurance, section 475.

"We are not dealing with a case in which full disclosures were made and in which the agent left out what he thought were non-essential details. Here the agent was new to the business and the applicant was an expert of extended experience."

It was held that there could be no recovery on the policy.

In *Massachusetts Bonding & Ins. Co.* v. *Piedmont Service Station, Inc.*, 165 Va. 167, 175, 181 S. E. 397, 400, the facts were that the insured correctly described to the soliciting agent of the insurance company, the truck on which it desired coverage, but the agent, relying upon his own knowledge of the facts, incorporated in the policy the description of another truck then owned by the insured, but not in service. The truck thus incorrectly described, was involved in an accident and the owner was held liable for personal injuries to a third party, and sought indemnity on the policy from the insurance company. Justice Eggleston, speaking to the point, said: "Parol evidence of the correct description of the truck was admitted because the insurance company was estopped by the knowledge and mistake of its agent from asserting the misdescription as a defense. It is well settled that the principles of equitable estoppel are applied in the actions at law as well as in suits in equity."

Cooley's Briefs on Insurance (2d Ed.) page 4111, summarized the general rule on the subject thus: "So, too, when the application is filled out by the agent from his own knowledge, no information being sought from the insured, who signs the application in blank or without reading it, relying on the agent's good faith and assumption of knowledge, the false statements are the fault of the company through its agent and the insured cannot be called on to bear the consequences." See *F. Y. Van Ross, etc.* v. *Metropolitan Life Ins. Co.*, 134 Kan. 479, 7 P. (2d) 41, 81 A. L. R. 821, and note at page 834; *Davern* v. *American Mut. Liability Ins. Co.*, 241 N. Y. 318, 150 N. E. 129, 43 A. L. R. 523, and note at page 527.

The vital question presented is really one of fact. If the agent acting on his own knowledge or information, and without fault of plaintiff, wrote false and material statements in the application, then the insurance company is estopped from claiming a forfeiture. If on the other hand, the conduct, or information, furnished by the plaintiff to the agent, was such that a reasonable man would be misled thereby, and the agent

was in fact misled as to the correctness of material information given by him to his principal, then the company is not estopped from claiming the invalidity of the policy.

Plaintiff's own statement regarding the conversation which took place between him and the agent at the time the contract was signed, is as follows: "He said 'let me put that policy back in force,' and I said 'can you give me the same policy I had before, the same kind of policy,' and he said 'I can.' Then I said 'I might consider it,' and he said 'when can I come to see you,' and I told him when he could come up, and he said, after he came up there 'I came up here to write that policy for you, and the only thing I want to ask you is this: You haven't been under treatment of a doctor or been in any hospital for treatment within five years, have you, since I talked to you before,' and I said 'no,' and he said 'that is all I want to know,' so he went on and filled out the application. I never read the application at all but I went on and signed it, and he went and got me the policy."

Question 13, in the copy of the application incorporated in the policy, and his reply, were read to plaintiff, and he was asked if the answer was true, to which he replied: "It certainly is. Nothing more than that x-ray, I had that and nearly all railroad men do that, we go and have a check-up once or twice every year. People who are not sick do that you know, and I done it to see that I was getting along all right, and I expect to keep it up as long as I live, having check-ups made."

In his cross-examination he admitted that he had consulted members of the medical staff at the Lewis-Gale hospital, but he could not remember the month or the year in which the consultation took place. He was positive that he had no organic trouble, and that he sought a general medical examination as was his custom to do, from time to time. Unfortunately he could recall no other general examination that he had had, and the records of the examination at the hospital reveal the time and the diagnosis. That is, plaintiff sought medical advice and treatment on February 6, 8, 15, and March 10, 1933. We are in accord with the general

accepted construction of this representation made by the California court in *Boyer* v. *United States F. & G. Co.*, 206 Cal. 273, 274 P. 57, and quoted in *Ocean Accident & Guaranty Corp.* v. *Rubin* (C. C. A.) 73 F. (2d) 157, 164, 96 A. L. R. 412, 421, as follows: "A reasonable construction of the question implies that it should be interpreted as relating to a consultation as to some disease or illness with which the applicant was or had been afflicted, not to some feeling of trivial discomfort or temporary indisposition, not affecting the general health."

It may be true, as plaintiff claims, that the medical consultations were for a minor and temporary ailment, and for a general check-up on his state of health, although the evidence for defendant indicates the contrary. It is not necessary to, and we do not rest the decision in the case on this evidence alone, but on it and on the following facts: The plaintiff knew he had signed a similar application in 1931 for the old policy. When the local agent was discussing with him the advisability of applying for the policy in question, and at the time he signed the blank application, he was asked if there had been any changes in his health, address, or the like, since the old policy had lapsed, to which plaintiff replied that everything was the same as in the old one. It is clear that plaintiff knew that the local agent would get the necessary information from the application in the old policy. The trial court refused to permit the old application to be introduced in evidence before the jury. Defendant excepted to this ruling and for the purpose of the exception made the old application a part of the record, hence it is before us for consideration. Interrogatory No. 10, and the answer thereto, are identical in both applications. Under these circumstances plaintiff cannot evade responsibility for the answer written by the agent to the interrogatories in the application bearing date April 18, 1934. This answer indicates that plaintiff had never received any disability payments for sickness or accident, when as a matter of fact, as heretofore stated, he received the sum of $2,391.25 within the period of six years.

■ This court has repeatedly held that information as to substantial payments made on account of illness or accidents are material to the risk assumed in this class of insurance. Judge Holt aptly said in *Mutual Benefit Health & Accident Ass'n* v. *Ratcliffe, supra:* "We do not mean to say that his failure to recall some minor payment made upon an accident policy in another company would be material to the risk assumed, but if an applicant in the preceding nine years had made on other accident and health policies eleven claims, certainly such information would be important. It would tend to show either that the making of claims was a habit or that misfortune had dogged his footsteps."

In *Flannagan* v. *Northwestern Mutual Life Insurance Co.,* 152 Va. 38, 146 S. E. 353, 361, Judge Holt, speaking for the court, quoted with approval the following excerpt from *Keeton* v. *Jefferson Standard Life Ins. Co.* (C. C. A.) 5 F. (2d) 183: "The applicant's history in respect to his health and medical treatment were most material, as bearing upon whether the insurance risk would be assumed; and at least the applicant should make full and frank explanation and answers to all inquiries throwing light upon his present and past state of health. Nothing could well be more important than the fact of previous sickness and past medical treatment, as to which the applicant was best able to furnish correct information; and anything that tended to mislead, or indicated a purpose to conceal the real truth, would serve to invalidate a policy if procured by such misleading fraudulent conduct."

Judge Holt then added: "It may well be that there was no purpose to defraud but that is not the test.

"'The revisors were of opinion that if the answer or statement was material to the risk when assumed and was untrue, that no recovery should be had, but that if immaterial although false and fraudulently made that it should not bar recovery for the reason that such a statement could not have affected the risk, being immaterial to it. If the statement was material, although innocently made, of course no recovery

should be allowed.'" (Revisors' Note, Code 1919, section 4220.)

Plaintiff further contends that there must be causal connection between the false representation and the loss, and that inasmuch as the disability for which this action was instituted was due to an accident in which plaintiff was badly scalded, and not to any previous condition of his health, the false representations were not material. This is the rule in some jurisdictions, but the decisions on the point seem to be controlled by local statutes. *Sappington* v. *Central Mut. Ins. Ass'n,* 229 Mo. App. 222, 77 S. W. (2d) 140; *O'Keefe* v. *Zurich Gen. Acci. & Liability Ins. Co.* (C. C. A. 8) 43 F. (2d) 809, 73 A. L. R. 298; 32 C. J. 1279. The applicable statute in this jurisdiction is Code, section 4220. This section restricts the materiality of the statements of the false representation "to the risks when assumed."

The contract of insurance, upon which this action is based, covers loss from sickness or accident, and was purchased with one indivisible premium. The health and accident division are inseparable; the premiums are not apportioned partly to health and partly to accident. False representations of material facts in the application made by the applicant, go to the validity of the policy at its inception. It cannot be held valid for one purpose and invalid for another.

The same question was presented in *Columbia Nat. Life Ins. Co.* v. *Harrison* (C. C. A. 6) 12 F. (2d) 986, 988, in which this was said: "It seems clear that, as to the materiality of the false answer in this particular, the case upon this policy stands upon the same basis as if on a life insurance policy. The reasons which make such representations material to the risk of life insurance apply with full force to health insurance, and though this was a health and accident policy, and the recovery sought is solely under the accident provision, we see no way by which, from this point of approach, the policy may be valid for accident and invalid for health. The two liability covenants are not separable; they are purchased by one consideration, which is not in any way apportionable. Hence, if the false answer avoided the health

insurance, it necessarily avoided the accident insurance."

From the facts recited, it is apparent that although the local agent wrote answers to the questions in the application without reading the same to the plaintiff, under the circumstances stated, plaintiff is responsible for the statements therein contained. This is sufficient to avoid the contract of insurance, hence we deem it useless to discuss other assignments of error.

For the reasons stated the judgment of the trial court is reversed, the verdict of the jury is set aside, and final judgment is here entered for plaintiff in error, defendant in the trial court.

*Reversed and final judgment.*