# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

RESERVE LIFE INSURANCE COMPANY v. EARL H. FEREBEE.

March 6, 1961.

Record No. 5197.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*Aubrey R. Bowles, Jr.* (*Jack N. Herod; Bowles, Boyd & Herod*, on brief), for the plaintiff in error.

*William B. Spong, Jr.,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

On January 21, 1957, Earl H. Ferebee, at the solicitation of Eddie A. Brown, an agent of the Reserve Life Insurance Company, signed a written application for an insurance policy, effective as of January 25, 1957. On March 24, 1958, fourteen months thereafter, when the policy was in effect, Ferebee was hospitalized and underwent surgery

for the removal of a kidney stone. His hospital and surgical expenses amounted to $539.90. Payment of that amount was refused by the insurance company, and Ferebee instituted this action. The company denied liability on the ground that the application for the policy contained answers that were material to the risk and were untrue. Virginia Code, 1950, § 38.1-336. Upon trial by jury, a verdict was rendered in favor of Ferebee. Judgment was entered accordingly, and to review that judgment this writ was awarded the insurance company.

The evidence will be stated as follows:

The application for the insurance contained, among other provisions, the following questions and answers:

"6. Are you and all other members of the Family Group to be insured now in good health and free from any physical or mental defect? YES."

"8. Have you, or any member of the Family Group to be insured, ever had any disease of the heart, lungs, kidneys, stomach, or bladder; or high blood pressure, paralysis, arthritis, syphillis, cancer, diabetes, hernia, goitre, or rectal disease? YES. If answer is 'yes,' give full details. .......................................................
...................................................."

"9. Have you, or any member of the Family Group to be insured, received medical or surgical advice or treatment within the past three years? YES. If answer is 'yes,' give details below:

| DATE | WHICH MEMBER? | NATURE OF ILLNESS OR ACCIDENT | DOCTOR |
|---|---|---|---|
| 7/31/56 on | for | Operated Hernia on | T. Elmore Jones |
| | | left side | " |

Ferebee testified that Eddie A. Brown, agent of the insurance company, came to his home and solicited his application for a hospital and surgical expense policy; that he gave his full and complete medical history to Brown; and that his answers to Brown's interrogatories were inserted in the application by Brown. Specifically, he said he told Brown that he had been, within the three years, twice hospitalized for influenza; once for "twitching of his legs;" once for kidney colic (ureteral calculus); once for the repair of a hernia; and

for emphysema, which he described as "a shortness of breath caused by a defect of the lungs." He said he never knew he suffered from hypertension; but thought it might be connected with the "twitching of his legs;" that he was not able to read the answers inserted by Brown on the application, because he was fifteen or twenty feet away; and that after writing the answers, Brown placed the application form on his chair, and he, Ferebee, signed it without reading it.

Ferebee testified that he did not recall Question No. 6; but that if he had been asked if he was in good health, and free from any physical and mental defect, at that time, he would have answered "Yes," because he thought that was his condition. He admitted that he knew that Brown, in answer to Question No. 8, had underscored only the word "hernia," and did not put on the application the other illnesses he had mentioned.

Ferebee's medical record showed that he had been hospitalized in 1942, 1945, 1948, and 1949, for pneumonia, hernia, and hydrocele of cord; that he had received medical or surgical treatment within the past three years: in March, 1954, for bronchitis and influenza; in June, 1955, for hypertension, psychoneurosis; in March, 1956, ureteral calculus; in July, 1956, operation for hernia; and in January, 1957, for systenial vinal infection and chronic pulmonary emphysema. We are not told the nature of systenial vinal infection; but reference is made to influenza. Ferebee was last discharged from the hospital on January 10, 1957.

Another exhibit, a medical report on Ferebee, dated April 25, 1958, stated that when he was admitted to a hospital on March 24, 1958, "he apparently had been in fairly good health prior to the developing of a right upper quadrant mass. No history of hematuria."

Ferebee further said that when he conferred with Brown after the refusal of the insurance company to pay his hospital expenses, and asked Brown why he had not supplied the company with the information he had been given, Brown replied that he remembered something about it; but did not know why he had not inserted it in the application.

Brown testified that, "to the best of my knowledge, I put down exactly what Ferebee told me." However, he stated that he was unable to remember whether Ferebee told him about having emphysema, and that if he had told him, he would not have known what it meant, and added "Shortness of breath certainly wouldn't be sickness; not with us."

Brown said that he underlined the word "hernia," in Question No. 8, because that was "the normal way" of his company to have an answer set out; that it was "the custom of his company" to insert the details in the two empty lines under that question; and, if there was not enough room on those lines for the details, such details were to be put on the back of the page. He said he thought that after underlining the word "hernia," it was not necessary to repeat it in the detail lines. He did not explain why he inserted only one illness in answer to Question No. 9.

Brown had authority to solicit risks for his company, receive applications therefor, and forward them to his company. His employment carried with it the implication of authority to fill out an application, and to do all those things needful in perfecting it.

When an agent of an insurance company, who fills out an application for an insurance policy is duly informed of the facts and fails to state them in the application, the actual knowledge of the agent will be held to be the knowledge of the company, where there is good faith on the part of the applicant. *Harrison* v. *Provident Relief Ass'n*, 141 Va. 659, 669, 126 S. E. 696, 40 A. L. R. 616; *Royal Indemnity Co.* v. *Hook*, 155 Va. 956, 965, 157 S. E. 414; *Va. Auto Mut. Ins. Co.* v. *Brillhart*, 187 Va. 336, 345, 46 S. E. 377; 10 Mich. Jur., Insurance, § 49, pages 348 and 349; 29 Am. Jur., Insurance, §§ 1019 and 1020, pages 192 *et seq.*

In *Lynchburg Fire Ins. Co.* v. *West*, 76 Va. 575, 580, 44 Am. Rep. 177, we said that an applicant for insurance, when called upon to make answers to interrogatories, has a right to presume that the agent is competent to understand their meaning and effect as well as the meaning and effect upon the provisions of the policy bearing upon the disclosures made.

In *Modern Woodmen* v. *Lawson*, 110 Va. 81, 86, 87, 65 S. E. 509, this is said:

"* * * (A)n applicant for insurance has a right to depend upon the superior knowledge of the agent, and, in the absence of notice of limitations upon his powers, to assume that his authority is commensurate with the nature of his employment, and in good faith to act upon information imparted by the agent, and to follow his instructions in all matters pertaining to the preparation of the application."

In *Gilley* v. *Union Life Ins. Co.*, 194 Va. 966, 973, 76 S. E. 2d 165, quoting from 2 Joyce on Insurance, § 475, this is said:

" 'Where the insured at the time of making the application, gives full, true and correct answers, relying upon the skill, honesty, and good faith of the company's agent to fill out the application correctly, and such agent makes out the application incorrectly or inserts answers different from those given or false answers, the company cannot take advantage thereof, and where the applicant is ignorant of the discrepancy or wrongful act of the agent he is entitled to recover on the policy, and this rule applies even though the agent in such case has transcended his actual authority.' " *Mutual Benefit, etc., Ass'n* v. *Ratcliffe,* 163 Va. 325, 335, 175 S. E. 870; *Mutual Benefit, etc., Ass'n* v. *Alley,* 167 Va. 144, 150, 187 S. E. 456; *Sands* v. *Bankers' Fire Ins. Co.,* 168 Va. 645, 657, 192 S. E. 617. Cf. 45 C. J. S., Insurance, § 595 (5), page 409.

The insurance company contends here, as it did in the court below, that Ferebee was barred from recovery, as a matter of law, because he admitted that he "knew when he signed the application that the answers written thereon by the agent were untrue." It relies upon what we said in the *Gilley* case, *supra,* 194 Va. at page 974, and in *New York Life Ins. Co.* v. *Eicher,* 198 Va. 255, 259, 260, 93 S. E. 2d 269, with reference to knowledge on the part of an applicant for insurance.

The answer to the contention is that it is based upon the premises that the answers were untrue; and Ferebee knew they were untrue. The answers were not untrue. They were incomplete but true as far as they went. Ferebee did not admit that he knew they were untrue. He admitted only that he knew the agent had not written down all of the illnesses disclosed by him.

The statements in the two cases relied on must be considered in the light of the context in which they were employed. In each of them, answers of the applicant were untrue; but different attendant facts produced different results.

In the *Gilley* case, we held that where a plaintiff beneficiary honestly thought that her mother was in sound health, and in good faith gave correct and truthful answers to an insurance agent, she was not precluded from recovery solely because the insured suffered from a later illness, of which plaintiff was unaware. In that case, the agent, after being informed of a major operation upon the mother two years prior thereto, wrote down the answers, which later proved to be untrue.

In the *Eicher* case, the answers given by the applicant for the in-

surance were materially false as to prior treatment and health, and the agent who inserted the answers in the application knew they were untrue.

The real point in this case is whether or not an applicant for insurance, who gives correct answers, must follow through and see that the agent correctly writes them down. It is not his duty to check the agent as to what the agent considers material to be put on the application, if the statements of the applicant made in the first place were true. Mere knowledge that an agent is not putting down complete answers is not a defense, unless the evidence goes to show that the applicant knows that the agent in doing so is inserting false statements through mistake, neglect or fraud. There must be conduct upon the part of the applicant that amounts to a wrong. According to the evidence accepted by the jury, Ferebee disclosed to the agent all matters material to the risk assumed, and the failure to insert correct answers was due to the failure or neglect of the agent.

Here, the jury has accepted Ferebee's testimony that he made a full and fair disclosure of his medical history. The real question presented is one of fact. We must, therefore, accept the finding of the jury, (1) that no fraud or conspiracy has been proved; (2) that all facts suppressed should be charged against the company's agent only; (3) that Ferebee was not responsible for the misstatements or concealment on the part of the agent; and, (4) that the answers inserted on the application were not false, being merely incomplete. Consequently, there were no existing circumstances from which Ferebee could be charged with either actual or constructive knowledge of a falsity.

For the reasons stated, the judgment of the trial court is affirmed.

*Affirmed.*