Jerome N. BREAULT, Plaintiff,

v.

BERKSHIRE LIFE INSURANCE COMPANY, et al., Defendants.

Civ. No. 92–1512–A.

United States District Court, E.D. Virginia, Alexandria Division.

April 30, 1993.

Michael W. Robinson, Venable, Baetjer and Howard, David Tillman Stitt, Venable, Baejter and Howard, McLean, VA, for plaintiff.

James John Briody, Sutherland, Asbill & Brennan, Washington, DC, for Berkshire Life Insurance Company, defendant.

Janet Kay Whitaker, Cunningham & Associates, Alexandria, VA, for Victor Simon, defendant.

MEMORANDUM OPINION

ELLIS, District Judge.

## I.

This diversity case, governed by Virginia law, grows out of an insurer's cancellation of a disability benefits policy on the ground that the policy application contained false statements. Presented for decision is the question whether an insurer may cancel or rescind a policy where the insured, who provided accurate information to the insured's agent in the course of the policy application process, knew nonetheless that the application, as finally signed and submitted, contained false statements.

Plaintiff, Jerome N. Breault, brought this action following defendant Berkshire Life Insurance Company's ("Berkshire") rescission of his disability insurance policy and its refusal to pay benefits under the policy. Breault seeks to compel Berkshire to pay these disability benefits or, in the alternative, to recover from Berkshire and defendant Victor Simon, Berkshire's insurance agent, all damages arising from Berkshire's refusal to make such payments. Specifically, Breault's five count complaint alleges: (i) that Berkshire's rescission of Breault's insurance policy is invalid and ineffective; (ii) that Berkshire breached a valid contract with Breault in refusing to pay disability benefits; (iii) that Berkshire and Simon defrauded Breault; (iv) that, if Berkshire validly rescinded the policy, Simon breached his contract to procure insurance for Breault; and (v) that, given a valid rescission, Simon was also negligent in his efforts to procure insurance for Breault. For its part, Berkshire has filed a counterclaim for rescission.

This matter is now before the Court on defendants' motions for summary judgment. Summary judgment is appropriate where there is no genuine issue as to any material fact, and it is therefore apparent that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.;

*Walls v. Petersburg*, 895 F.2d 188, 190 (4th Cir.1990). Indeed, summary judgment "is properly regarded not as a disfavored procedural short-cut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). In this regard, courts have an affirmative obligation "to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (*quoting Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53). Given this, and for the reasons stated below, the Court grants summary judgment in favor of the defendants.

## II.

Plaintiff, Jerome N. Breault, is a Virginia resident who, in late 1989, sought to obtain an individual, long-term disability insurance policy. Although Breault already had disability coverage through a group insurance policy provided by his employer, he doubted the reliability and adequacy of this coverage. As a result, Breault contacted a friend who was an officer of Berkshire, a Massachusetts corporation that issues long-term disability insurance policies. Breault expressed his uneasiness with his current coverage and, as a result, his friend advised him that a Berkshire agent would contact him. Shortly thereafter, on January 8, 1990, Simon telephoned Breault to discuss the various disability coverage options available through Berkshire. Simon, a Maryland resident, was, at all times relevant to this action, a Berkshire insurance agent authorized to sell insurance in Virginia. In the course of their initial telephone conversation, Breault informed Simon that he had obtained a short-term disability policy from Mutual of Omaha, and that he also had disability coverage through his employer's group insurance plan.[1] Simon advised Breault that group disability policies usually provided inferior coverage, and that

---

1. Defendants dispute that Breault actually made this disclosure. But for purposes of this motion, Breault's version of the facts must be taken as true in light of his deposition testimony. *See Paroline v. Unisys Corp.*, 879 F.2d 100, 102–3 (4th Cir.1989) (on motion for summary judgment, plaintiff's version of the facts must be presented where the parties' versions conflict, at least to the degree that the allegations have support in the record).

Breault should not rely on the group policy. Breault further contends that Simon never advised him, in this or subsequent conversations, that Breault's other disability coverage would affect the issuance or terms of a Berkshire policy. Following this initial conversation, Simon sent Breault materials and price quotes relating to disability insurance coverage available through Berkshire. Breault received these materials and, after reviewing them and discussing various options with Simon, decided to apply for a Berkshire disability insurance policy.[2]

On January 30, 1990, Simon called Breault to complete the insurance application. In this telephone conversation, Simon went through the application questions with Breault one by one, and Breault provided him with the answers. In addition to background questions concerning Breault's age, social security number, address, occupation, and income, the application also requested information concerning other insurance coverage. Specifically, question 12 of the application, relating to "Disability Income Insurance," asked for a description of "all coverage in force including individual, franchise, association, group or government plans." While it is unclear from the record whether Breault told Simon on this occasion that he had other disability coverage, it is undisputed that Simon wrote down "none" as the answer to this response.[3]

Simon subsequently mailed the application to Breault, who reviewed the application, signed it, and returned it to Simon for transmittal to Berkshire. At the time Breault returned the application to Simon, he knew the information relating to his existing disability coverage was false. Following his completion of a medical examination, Berkshire approved Breault's application for disability insurance and issued him a policy.

Breault submitted a check for the first premium and continued to remit premiums to Berkshire until his policy was rescinded.

Breault underwent surgery in January 1991, which left him totally disabled and unable to work. Consequently, Breault submitted claims for, and received benefits under, his short-term Mutual of Omaha policy and his employer's group insurance policy. In addition, Breault filed a claim for benefits under his Berkshire policy, on which he noted the existence of the Mutual of Omaha policy, but not the group insurance disability coverage. In the course of investigating this claim, Berkshire discovered that Breault's original application had not listed any additional policies. Given this, Berkshire determined that Breault's failure to disclose material facts on the application voided the policy. Berkshire's chief underwriter determined that had Berkshire known of these policies, it would not have issued long-term disability insurance to Breault in the first place because the amount of combined coverage requested by Breault exceeded Berkshire's issue limitations guidelines. Thus, Berkshire notified Breault that it was rescinding the policy because of material misrepresentations in the original application and refunded his premium checks. This action followed.

### III.

The central dispute in this case is whether Berkshire validly rescinded Breault's disability policy. Virginia law permits an insurer to rescind an insurance policy and refuse benefits to an insured if the insurer clearly proves that an answer or statement in the insured's application for insurance was (i) untrue; and (ii) material to the risk when assumed. *Va.Code* § 38.2–309 (Michie 1990);[4] *Mutual of Omaha Ins. Co. v.*

---

**2.** Included in these materials was a Berkshire brochure that stated the following: "[I]f you have group coverage, keep it. It will provide inexpensive *additional* security. Just don't rely on it. The reasons will become clear to you."

**3.** Simon testified in his deposition that Breault's response to Question 12 was "none." Breault's deposition testimony does not contradict this contention. Nor has Breault denied under oath that he made this response. Given the state of the record, Breault is not entitled to an inference

that he told Simon of his existing disability coverage during this conversation. As noted, however, it is taken as true for purposes of this motion that Breault fully disclosed his other disability policies to Simon in their initial contact. *See supra,* note 1.

**4.** *Va.Code* § 38.2–309 provides, in pertinent part, as follows:

No statement in an application ... made before or after loss under the policy shall bar a

*Dingus,* 219 Va. 706, 250 S.E.2d 352, 355 (1979); *Utica Mutual Ins. Co. v. National Indemnity Co.,* 210 Va. 769, 173 S.E.2d 855, 858 (1970). In this case, it is undisputed that Breault's insurance application contained an untrue statement. Neither party disputes that Breault's application falsely represented that Breault had no other disability coverage. Both parties, however, vigorously dispute the materiality of this false statement. Whether Berkshire can satisfy the settled test for rescission depends on whether it can clearly prove that Breault's misrepresentation was material to the risk it assumed in issuing the policy.[5] This determination, often a mixed question of law and fact, is one for the court, not the jury. *U.S. Fidelity & Guaranty Co. v. Haywood,* 211 Va. 394, 177 S.E.2d 530 (1970); *Chitwood v. Prudential Ins. Co.,* 206 Va. 314, 143 S.E.2d 915 (1965).

■ The definition of what statements are material to an insurer's risk is well-settled. A factual representation is material to the

risk to be assumed by an insurance company if it would reasonably influence the company's decision whether or not to issue a policy. *Time Ins. Co. v. Bishop,* 245 Va. 48, 425 S.E.2d 489, 491 (1993); *Dingus, supra,* 250 S.E.2d at 355.[6] The question presented here is whether Berkshire has clearly proven that the false information concerning Breault's other disability policies reasonably influenced Berkshire's decision to issue him a disability policy.

■ Information concerning an applicant's existing disability coverage is clearly material to an insurer's decision to issue a disability policy because it bears on the possibility that the applicant, if overinsured, might feign a disabling illness or seek to avoid returning to work after a legitimate injury. Such misconduct by the insured is an additional risk an insurer is free to decline where, as here, an applicant's potential combined monthly disability benefits would exceed his regular

recovery upon a policy of insurance *unless it is clearly proven that such an answer or statement was material to the risk when assumed and was untrue.* (emphasis added)

5. As a preliminary matter, Breault argues that Berkshire's failure to provide the notice required by *Va.Code* § 38.2–3502 bars it from relying on statements in Breault's application as a basis for rescission. This argument fails. The parties dispute whether Berkshire provided notice, in language "substantially similar" to language provided in the statute warning Breault that his insurance policy might not be valid if the application contained incorrect information. Yet, even assuming that such notice was not provided, Berkshire's failure in this regard does not preclude it from relying on statements in the application to rescind the policy. The penalties for violating § 38.2–3502 are set forth in §§ 38.2–218 and 38.2–219. Thus, while Berkshire may be liable for penalties under these provisions, its alleged violation of § 38.2–3502's notice requirement does not bar rescission.

*Southland Life Ins. Co. v. Donati,* 201 Va. 855, 114 S.E.2d 595 (1960), relied on by Breault, supports, rather than contradicts, this conclusion. The statute at issue in *Donati* explicitly provided that an insurer could not rely on statements in an insured's application as a defense to a claim unless the application was attached to, and made part of, the insurance policy. There, the statute's plain language explicitly restricted the insurer's remedies. No such explicit restrictions exist with respect to § 38.2–3502's notice requirement. Instructive in this regard is that Virginia explicitly restricts an insurer's remedies

elsewhere in the Code, but not with respect to § 38.2–3502. For example, § 38.2–3511(A), a statute similar to that at issue in *Donati,* specifically provides that insureds shall not be bound by statements in their application unless a copy is attached to, or endorsed on, the policy when issued as a part of the policy. Had the Virginia legislature intended to permit applicants to escape responsibility for misrepresentations contained in their applications in instances where certain policy language was not inserted, it would have specified that remedy in § 38.2–3502, just as it did in § 38.2–3511(A) and in the statute at issue in *Donati.*

In any event, the record discloses that Breault had effective notice that false answers in his application could invalidate the Berkshire policy.

6. Indeed, the rationale underlying the materiality standard has been expressed as follows:

Representations in an application for a policy of insurance should not only be true but full. The insurer has the right to know the whole truth. If a true disclosure is made, it is put on guard to make its own inquiries and determine whether or not the risk should be assumed. A misstatement of material facts by the applicant takes away its opportunity to estimate the risk under its contract. A knowledge or ignorance of such facts would naturally and reasonably influence the judgment of the insurer in making the contract or in establishing the degree of character of the risk in fixing the rate of premium.

*Inter–Ocean Ins. Co. v. Harkrader,* 193 Va. 96, 67 S.E.2d 894, 897 (1951).

monthly income if he is provided additional disability coverage. In this case, according to the uncontradicted testimony of Berkshire's chief underwriter, Berkshire would not have issued a policy to Breault had it known of his other disability policies because the amount of disability income insurance sought, when combined with Breault's existing disability coverage, clearly exceeded Berkshire's underwriting guideline limitations. Given this, the materiality of Breault's misstatement is clearly established.[7]

Breault attacks this conclusion, advancing several arguments, none of which are persuasive. First, Breault argues that information concerning existing disability insurance cannot be considered material to the risk assumed because it does not relate to Breault's health or his susceptibility to a disabling illness. But in issuing a policy, an insurer assesses not only an applicant's health, but also a whole host of other factors, including, *inter alia*, the financial and moral fitness of an applicant, and the likelihood that the insured will file a false claim or malinger after a legitimate injury.[8] Thus, while the existence of other disability insurance may not increase the chances that an insured will actually become disabled, it may nonetheless increase the risk that an illegitimate disability claim will be filed in the future.[9]

■ Similarly unconvincing is Breault's contention that triable issues of fact exist with respect to the materiality of the misstatement because both Breault and Simon believed that information concerning existing disability coverage was unimportant and immaterial. As established above, it is clear that once an untrue statement has been

---

7. *See Hawkeye–Security Ins. Co. v. Government Employees Ins. Co.*, 207 Va. 944, 154 S.E.2d 173, 176 (1967) (uncontradicted testimony of underwriting manager that insurer would not have issued policy if question had been answered truthfully was sufficient to prove materiality); *see also Time Ins. Co. v. Bishop, supra*, 425 S.E.2d at 491 (testimony of underwriting supervisor that insurer would not have issued policy had it possessed concealed information was sufficient to establish materiality); *Mutual of Omaha Ins. Co. v. Echols*, 207 Va. 949, 154 S.E.2d 169, 171 (1967) (testimony of chief underwriter that policy would not have been issued if application had disclosed fainting spells was clear proof of materiality).

8. In fact, a letter to Breault from the Virginia Bureau of Insurance underscores the materiality of information relating to existing disability insurance. In explaining the apparent reasons for Berkshire's rescission of his policy, this letter states:

> Apparently, the amount of coverage in force created a situation that placed you in excess of the issue limitations of Berkshire Life Insurance Company. For this reason, the company determined that rescission was necessary, advised you of their decision, and refunded the premiums to you. This is not an unusual underwriting decision for an insurance company writing disability policies. Otherwise, it would be possible for insured persons to obtain disability coverage in amounts which might be in excess of their annual income from their occupation. The situation created by this over-insurance is not conducive to proper health underwriting practices. This situation can cause malingering which can come about when a person pretends to be ill or injured in order to avoid duty or work.

Letter from Stanley Freed, Virginia Insurance Commission to Breault, 12/17/91, Exhibit H, *Defendant Berkshire's Motion for Summary Judgment*.

9. Breault contends, however, that the Virginia legislature has established that an applicant's failure to disclose other disability insurance does not permit an insurer to rescind a disability policy. According to Breault, this legislative intent is manifested in *Va.Code* § 38.2–3504. But this provision simply provides that insurance companies must use certain language if they wish to include a clause in a policy providing that if the applicant has other insurance which has not been disclosed, the insurer is only liable for a proportionate share of the losses covered under the policy. Contrary to Breault's contention, this apportionment of losses is not an insurer's sole remedy for an applicant's failure to disclose information relating to other disability coverage. Section 38.2–3511 provides that an insured's recovery under a policy may be barred by material misrepresentations made on his application. Indeed, this section is not inconsistent with § 38.2–3504. For example, a disability policy could provide for both rescission in the event of a false statement and apportionment where information concerning other insurance is properly disclosed. If an applicant subsequently made a false and material representation on his application, his policy could be rescinded. On the other hand, the applicant could submit fully truthful information, but later acquire other insurance. In this case, § 38.2–3504's "other insurance" clause would limit the first insurer's liability to a proportionate share. Simply put, § 38.2–3504 does not provide the exclusive remedy for an applicant's failure to disclose information concerning other insurance.

clearly proved, a court, not a jury, must determine the materiality of the misstatement. Equally clear is that the standard is an objective one. It is immaterial what Breault or Simon may have thought. In sum, a court considering whether a false statement was material must determine only whether the misrepresentation would "reasonably" influence an insurer's decision to issue a policy. *Dingus, supra,* 250 S.E.2d at 355. Under Virginia law, an insurer's right to rescind on the ground of an applicant's material, false statement does not depend on a showing that the applicant was aware of the statement's materiality. To permit applicants to recover on policies based on applications they know to contain false information, even if they believe the information not to be material, would undermine the policy interest in encouraging full, accurate, and truthful disclosures on insurance applications. And the undisputed facts at bar compel the conclusion that Breault's misstatement was, in fact, material to the risk assumed by Berkshire in issuing the policy. It follows that Berkshire validly rescinded Breault's disability policy.

Seeking to avoid this conclusion, Breault shifts ground and argues that Berkshire is estopped from rescinding his policy because he previously told Simon about the other disability policies, and Simon, not Breault, actually filled out the policy application. In essence, Breault's contends that he is not responsible for the submission of false information to Berkshire because Simon incorrectly completed the application. This argument fails.

█ It is well established under Virginia law that where, as here, an insured individual seeks to estop an insurer's rescission of a policy because an agent inaccurately filled out the application, each of the following elements must be established: (i) that the false answers contained in the application were actually written down by the insurer's agent; (ii) that these answers were truthfully given by the applicant without fraud or collusion; and (iii) that the applicant had no knowledge, actual or constructive, that his application contained false answers. *Dingus, supra,* 250 S.E.2d at 356; *New York Life Ins. Co. v. Eicher,* 198 Va. 255, 93 S.E.2d 269, 273 (1956); *Gilley v. Union Life Ins. Co.,* 194 Va. 966, 76 S.E.2d 165, 170 (1953). Here, Breault knew that the application contained a false answer. Thus, whatever the facts may show as to the first two elements,[10] Breault fails to meet the third element. Accordingly, he cannot establish a valid basis for estoppel.

Breault's heavy reliance on *Reserve Life Ins. Co. v. Ferebee,* 202 Va. 556, 118 S.E.2d 675 (1961) and *Sands v. Bankers' Fire Ins. Co.,* 168 Va. 645, 192 S.E. 617 (1937) is misplaced. In *Ferebee,* the insured's application was completed by an agent who, although fully informed of the applicant's medical conditions, failed to include all of the information provided on the application, noting only that the applicant had previously suffered a hernia. The *Ferebee* court estopped the insurer from rescinding the policy because of the agent's lapse, holding that the answers provided on the application "were not untrue," but merely "incomplete and true as far as they went." 118 S.E.2d at 678. As such, the applicant's knowledge that the agent had not written down all of his illnesses did not amount to actual knowledge of *false* statements in his application. Here, unlike in *Ferebee,* Breault's answer to the question at issue was not an incomplete response; rather, it was a flatly false denial that he had existing disability coverage.

█ Contrary to Breault's contention, Simon's alleged knowledge of the falsity of this statement is immaterial. *See Eicher,* 93 S.E.2d at 274 ("[t]he insurer is not estopped to avoid the policy where both the applicant and the insurer's agent know that material answers contained the application are false"). *Ferebee* simply holds that an insured is not responsible for an agent's failure properly to record information in an application where he *does not have knowledge of the falsity of the statements written down by the agent.* As the *Ferebee* court itself stated:

---

10. Although Breault meets the first element of the estoppel test, there is substantial doubt that

he can establish the second.

The real point in this case is whether or not an applicant for insurance, who gives correct answers, must follow through and see that the agent correctly writes them down. It is not his duty to check the agent as to what the agent considers material to be put on the application, if the statements of the applicant made in the first place were true. Mere knowledge that an agent is not putting down *complete* answers is not a defense, *unless the evidence goes to show that the applicant knows the agent in doing so is inserting false statements through mistake, neglect or fraud. There must be conduct upon the part of the applicant that amounts to a wrong.*

*Ferebee,* 118 S.E.2d at 678 (emphasis added). Here, Breault's admitted, knowing submission of an application containing false information constitutes wrongful conduct that eviscerates his estoppel argument.[11]

By the same token, this knowing submission of false information also distinguishes the case at bar from *Sands. Sands* held that an agent's full knowledge of material misrepresentations precluded the insurer from rescinding its policy with the insured. In doing so, however, the court stated:

It is equally well settled that, where the assured makes a full and fair disclosure of all material facts to the agent, and the latter, either through ignorance, negligence or fraud, fails to correctly impart this knowledge to the insurance company, *and the assured is in no way at fault for the act of the agent in failing to correctly transmit the information,* then the insurance company is estopped from claiming a forfeiture of the policy.

*Sands,* 192 S.E. at 621. Indeed, in *Sands* the insured made a full and fair disclosure to the agent, and the policy was issued without the submission of a written application. There, unlike in the instant case, the insured never reviewed the information provided, but relied on the agent to transmit accurately to the company the information he accurately provided orally to the agent. Here, Breault reviewed the entire application, signed it, and then returned it to Simon, knowing that it contained false information. Unlike the insured in *Sands,* Breault had actual knowledge that the insurance company received false information. Indeed, it is this actual knowledge that is fatal to Breault's estoppel defense.

■ Similarly, Breault's fraud claims cannot defeat summary judgment. Breault argues that Berkshire and Simon fraudulently induced him to enter into the insurance contract with Berkshire, and that they are liable for all damages arising from Berkshire's refusal to pay benefits on the policy. To establish fraud, Breault must prove the following elements by clear and convincing evidence: (i) a false representation (ii) of a material fact, (iii) made intentionally and knowingly (iv) with the intent to mislead, (v) reliance by the party misled, and (vi) resulting damage to the misled party. *Elliott v. Shore Stop, Inc.,* 238 Va. 237, 384 S.E.2d 752, 756 (1989). This he cannot do.

■ Breault cannot establish, nor does the record reflect, that Berkshire or Simon made any affirmative misrepresentations relating to his retention of other disability coverage. Put simply, Breault concedes that neither defendant told him that having other coverage *would not* affect his insurability with Berkshire. To be sure, Berkshire's promotional brochure contained a statement concerning group coverage policies which advised applicants that: "[I]f you have group coverage, keep it. It will provide inexpensive *additional* security." (emphasis in original) But having other disability coverage did not necessarily disqualify an individual from coverage through Berkshire. Disqualification occurs only where the additional coverage sought, combined with existing coverage, exceeds Berkshire's issue limitations. Thus, this statement was not a misrepresentation on the part of Berkshire. Nor did Simon's comments to Breault about group insurance policies amount to an affirmative misrepresentation on his part. Simon allegedly told Breault that group policies

---

11. Virginia law recognizes that insurance companies have "a right to be in possession of the true facts and correct information when they make a determination whether or not a risk should be assumed." *Dingus, supra,* 250 S.E.2d at 355.

were generally unreliable and "worthless;" but these statements are insufficient to establish fraud because they are expressions of opinion, not material representations of fact. Consequently, they cannot form a proper basis for a fraud claim. *See Henning v. Kyle,* 190 Va. 247, 56 S.E.2d 67, 69 (1949) (fraud cannot be predicated on "mere expressions of opinion"); *Piedmont Trust Bank v. Aetna Cas. & Sur. Co.,* 210 Va. 396, 171 S.E.2d 264, 267 (1969) (same); *Garber v. Bressee,* 96 Va. 644, 32 S.E. 39, 41 (1899); *Pennsylvania Life Ins. Co. v. Bumbrey,* 665 F.Supp. 1190 (E.D.Va.1987).

■ Moreover, no fraud arises from any alleged *implicit* misrepresentations made by Berkshire and Simon. In essence, Breault claims that the defendants' silence and failure to warn him that existing disability coverage would affect his ability to recover benefits under Berkshire policy amount to fraud. Virginia law clearly recognizes that fraud can be predicated on the concealment or suppression of material facts. *Saunders v. General Services Corp.,* 659 F.Supp. 1042 (E.D.Va. 1987) *(quoting* 8B *Michie's Jurisprudence* § 15 at 300).[12] But insufficient evidence exists in the record to raise a genuine issue of material fact concerning material concealment in this case.

■ Berkshire's failure to place warnings concerning its issue limitations in its promotional brochure, for example, does not represent a material concealment because the insurability of each applicant depends on the information provided in his written application. Consequently, this brochure appropriately does not provide detailed coverage information that would hold true for all potential customers. As a result, the brochure's silence on the topic of issue limitations does not amount to fraud. Similarly, no concealment arises from Simon's corresponding failure to warn Breault that his existing coverage would preclude recovery under a Berkshire policy. Even assuming that Breault told Simon of his existing disability coverage in their initial telephone conversation, Simon

would not, and did not, know how this insurance would affect the Berkshire policy. Simon did not make underwriting decisions for Berkshire. Other Berkshire employees made these decisions based on the information provided *in the application.* Thus, prior to its review by Berkshire's underwriters, Simon could not have known whether Breault's application would be accepted. Consequently, Simon cannot be held to have concealed a material fact. *See Harris v. Dunham,* 203 Va. 760, 127 S.E.2d 65, 72 (1962) (holding that lack of knowledge cannot form basis of concealment of material fact).

Even assuming Breault can establish that Berkshire and Simon intentionally concealed material facts, his reliance on their silence must have been reasonable and justified. *Foremost Guaranty Corp. v. Meritor Savings Bank,* 910 F.2d 118, 125 (4th Cir.1990); *Meridian Title Ins. Co. v. Lilly Homes, Inc.,* 735 F.Supp. 182, 185 (E.D.Va.1990) *aff'd* 934 F.2d 319 (4th Cir.1990). It was not. An insurance application request for information on existing disability insurance coverage raises a presumption that such coverage might affect an individual's insurability. Indeed, even if Breault did not fully understand the relevance or the materiality of the requested information, it was patently unreasonable for him to rely on Berkshire and Simon's silence to conclude that he could provide *false* answers on his application and nonetheless obtain a valid policy. In sum, Breault's fraud claim fails to survive summary judgment because he cannot raise triable issues of fact relating to any false representations made by the defendants or his reasonable reliance on these misrepresentations.

Breault's fallback claims against Simon for breach of contract and negligence fare no better. Breault contends that, given a valid rescission of the insurance policy, Simon must be held liable for his failure to procure valid disability coverage. Yet Simon did, in fact, obtain insurance coverage for Breault. Breault, relying on *Lazzara v. Howard A. Esser,* 802 F.2d 260 (7th Cir.1986), asserts

---

12. The *Saunders* court recognized that:
    If a party conceals a fact that is material to the transaction, knowing that the other party is acting on the assumption that no such fact exists, the concealment is as much a fraud as if the existence of the fact were expressly denied or the reverse of it expressly stated. *Id.*

that an agent must obtain *effective* insurance to avoid liability for breach of contract and negligence. To be sure, the *Lazzara* court held that an agent is liable "if the policy obtained is void or materially defective *through the agent's fault....*" *Id.* at 266 (emphasis added). Breault's reliance on this case, however, is fatally undermined by the undisputed fact that Breault, not Simon, is responsible for the eventual rescission of the policy. Accordingly, these counts of Breault's complaint must be dismissed as well.

## IV.

For the reasons stated above, the Court grants defendants' motions for summary judgment. An appropriate order shall issue.