JUSTICE LACY
delivered the opinion of the Court.
Pursuant to our Rule 5:42, the United States Court of Appeals for the Fourth Circuit certified three questions of Virginia law to this Court regarding the enforceability of a life insurance policy. The questions involve the application of Va. Code §§ 38.2-302 and -319. We accepted the questions by order entered February 13, 1998.
*268 The facts, as presented in the certification order, are as follows.* On January 28, 1995, James A. Hilfiger (Hilfiger) filled out an application for a life insurance policy with Transamerica Occidental Life Insurance Company (Transamerica) seeking insurance upon the life of his father, Paul L. Hilfiger. On the application form, Hilfiger answered all questions on his father’s behalf, and where the form required the “signature of proposed insured,” Hilfiger signed his father’s name. Deborah C. Highsmith, a Licensed Resident Agent of Transamerica, signed the application as a “witness to all signatures.” Highsmith knew that Hilfiger was signing the application on behalf of his father.
Hilfiger’s father did not see the life insurance application, nor did he give Hilfiger written consent to sign his name. However, Hilfiger claims that he spoke to his father about the policy, and that his father gave him oral authorization to take out the policy. The application named Hilfiger as the sole beneficiary for the policy.
In May 1995, Hilfiger’s father underwent a medical examination in connection with the life insurance application. At the medical examination, Hilfiger’s father signed a form entitled “PART II of an Application for Insurance to the Transamerica Occidental Life.” This form did not identify the type of insurance applied for, who the proposed beneficiary was, or the amount of coverage sought. Transamerica issued the insurance policy on October 9, 1995.
On November 13, 1995, Hilfiger’s wife, Donna C. Hilfiger, became a broker for Transamerica. Shortly thereafter, she executed an amendment to the insurance policy as a Transamerica resident agent. As with the original application, Hilfiger signed his father’s name to the form. Hilfiger’s father did not see the document, but Hilfiger asserts that he discussed the amendment with his father. Nine days after the amendment was executed, Hilfiger’s father became ill. He died four days later on December 3, 1995.
Transamerica refused to pay the proceeds of the life insurance policy. Hilfiger filed a motion for judgment against Transamerica in the Circuit Court of the City of Virginia Beach seeking the proceeds of the policy, additional damages, and costs. Transamerica removed the case to file United States District Court for the Eastern District of Virginia and later filed a motion for summary judgment. The federal district court granted Transamerica’s summary judgment motion, con- *269 eluding that the execution of the policy did not comply with Code § 38.2-302 and, therefore, was void. Hilfiger appealed to the Court of Appeals.
In certifying the questions to this Court, the Court of Appeals stated that the answers would be determinative of the proceeding pending before it. We address the three questions in order.
I.
The Court of Appeals first asks:
Whether the son’s signing his father’s name as “proposed insured” violates Va. Code § 38.2-302, where the son discussed the policy with his father, had verbal authorization to apply for the policy, and his father later submitted to a medical examination and signed a form entitled “PART II of an Application for Insurance to the Transamerica Occidental LifeT’
At common law, a policy of insurance taken out on the life of an insured without the insured’s knowledge or consent by someone other than the insured was usually held void as against public policy. 1 Bertram Harnett & Irving I. Lesnick, The Law of Life and Health Insurance § 3.04[1][a] (1997). The reason for this rule was the risk to the insured that a beneficiary would be tempted to “hasten by improper means the time when he will receive the benefits of the policy.” Wood v. New York Life Ins. Co., 336 S.E.2d 806, 809 (Ga. 1985); Hopkins v. Hopkins, 614 A.2d 96, 100 (Md. 1992).
Code § 38.2-302(A) codifies this common law principle, stating in pertinent part that:
No contract of insurance upon a person shall be made or effectuated unless at the time of the making of the contract the individual insured, being of lawful age and competent to contract for the insurance contract (i) applies for insurance, or (ii) consents in writing to the insurance contract.
The statute provides the requisite protection for an insured by identifying two alternative conditions for creating a valid contract of life insurance. The specific conditions identified by the General Assembly reflect an intent to require unequivocal evidence that an insured approved the creation of a contract of insurance on his or her life. With this purpose in mind, we conclude that the facts in this case, as *270 recited in the certification order, do not establish proof of either condition.
First, the evidence in this case, that Hilfiger’s father knew about the policy and orally authorized Hilfiger to apply for the policy, does not constitute an application for the policy by the insured as required by the statute.
At one time, the insured’s knowledge of the policy alone was sufficient to establish compliance with the requirements of the Code. Former Code § 38.1-330, the predecessor to Code § 38.2-302, provided in relevant part that “[n]o contract of insurance upon the person . . . shall be made or effectuated unless . . . the individual insured . . . applies therefor, has knowledge thereof, or consents thereto . . . .” In 1986, however, the General Assembly eliminated the phrase “has knowledge thereof,” leaving the two current alternative conditions as the only means of creating a valid contract of life insurance. Acts 1986, ch. 562.
We also conclude, as Hilfiger acknowledges, that orally authorizing another to take out a policy does not alone constitute “applying” for the policy. If oral authorization alone were enough to satisfy the application requirement, the written consent alternative would be rendered superfluous. Wren v. New York Life Ins. Co., 493 F.2d 839, 841 (5th Cir. 1974) (interpreting a similar statute).
Nevertheless, Hilfiger asserts that the application prong of the section was satisfied in this case because his father “materially participated” in the application process by providing a medical history and submitting to a medical examination. We disagree. “Material participation” in the application process is not synonymous with applying for the policy. As we have said, the purpose of the conditions required for a valid contract of life insurance is to eliminate any doubt that the insured knew about and agreed to the issuance of the insurance contract. Here, providing medical information in conjunction with the issuance of an insurance policy did not reflect consent to the contract of insurance.
For the same reason, we reject Hilfiger’s contention that his father’s signature on the medical examination form qualified as a consent in writing to the insurance contract. The insured’s signature on the medical form affirmed only that the information provided on the form was correct. Although the form itself stated that it was a part of an application for insurance, it contained none of the terms of the contract. It was not, and could not have been, a written consent “to the insurance contract” as required by Code § 38.2-302.
*271 For these reasons, we conclude that the facts of this case do not satisfy either alternative required by Code § 38.2-302 for the creation of a valid contract of life insurance. Accordingly, we answer the first question in the affirmative.
n.
In the second certified question the Court of Appeals asks:
Whether the insurance policy should be enforced on behalf of the beneficiary despite the violation of § 38.2-302, in light of Virginia Code § 38.2-319’s provision that “[a]ny insurance contract made in violation of the laws of this Commonwealth may be enforced against the insurer?”
We answer this question in the negative. If Code § 38.2-319 required enforcement of a policy issued in violation of Code § 38.2-302, the protection for an insured intended by Code § 38.2-302 could never be realized, and Code § 38.2-302 would be meaningless. Code § 38.2-319 does not compel such a result.
By its own terms, Code § 38.2-319 applies to a contract of insurance which is “made” in violation of a law of the Commonwealth. Code § 38.2-302 declares that if the statutory requirements are not met, no life insurance policy can be “made or effectuated.” Thus, in the absence of compliance with the provisions of Code § 38.2~302(A), no contract of insurance is created, and any policy issued under those circumstances must be void ab initio. Wood, 336 S.E.2d at 809, 811-12 (interpreting a similar statute). Contra Jackson Nat’l Life Ins. Co. v. Receconi, 827 P.2d 118, 131 (N.M. 1992).
Here, no contract of life insurance was “made or effectuated” because there was no compliance with Code § 38.2-302(A). Therefore, Code § 38.2-319 does not require enforcement of the insurance policy issued by Transamerica in this case.
m.
Finally, the Court of Appeals asks:
Whether an insurance company can be estopped to rely on § 38.2-302 because its agent knew about the incorrectness of the signature on the application?
Estoppel is an equitable principle that prevents one “whose action or inaction has induced reliance by another from benefiting *272 from a change in his position at the expense of the other.” Employers Commercial Union Ins. Co. of America v. Great American Ins. Co., 214 Va. 410, 412, 200 S.E.2d 560, 562 (1973). Hilfiger argues that Transamerica should be estopped from relying on Code § 38.2-302 to avoid payment on the life insurance policy because it is charged with the knowledge of its agents, both of its agents knew that the insured did not sign the application form, and both agents failed to inform Hilfiger of the consequences of that omission. This failure, Hilfiger asserts, prevented him from taking the appropriate corrective measures to secure a valid life insurance policy for his father.
We have addressed the application of equitable estoppel in the context of enforcing insurance policies against an insurer. Id.; Reserve Life Ins. Co. v. Ferebee, 202 Va. 556, 118 S.E.2d 675 (1961); New York Life Ins. Co. v. Eicher, 198 Va. 255, 93 S.E.2d 269 (1956); Gilley v. Union Life Ins. Co., 194 Va. 966, 76 S.E.2d 165 (1953). And, as Hilfiger points out, we have applied the doctrine to enforce an insurance policy based on imputing to the insurer its agent’s knowledge of false statements on the application. See Gilley, 194 Va. at 974, 76 S.E.2d at 170. These cases all involved the level of knowledge and complicity of both the agent and applicant in supplying such false information. None of these cases, however, involved consideration of whether the equitable doctrine of estoppel should be applied in a manner which negates a significant public policy codified by the General Assembly.
Jurisdictions addressing that situation have not been unanimous in their conclusions or rationales. One court applied equitable estoppel based on the theory that the statutory requirements for a valid life insurance contract reflect a public policy to protect the insured and the beneficiary, rather than to preserve the public order and morals and, therefore, the statutory requirements can be waived by the beneficiary. Adam Miguez Funeral Home, Inc. v. First Nat’l Life Ins. Co., 234 So.2d 496, 499 (La. Ct. App. 1970). Another court concluded that the failure to apply equitable estoppel under these circumstances would allow insurers to perpetrate a fraud upon policyholders by accepting premiums on a policy, knowing that the policy was void from the beginning. Holmes v. Nationwide Mut. Ins. Co., 244 N.Y.S.2d 148, 153 (1963).
In contrast, equitable estoppel has not been applied in these circumstances on the theory that its application would invite beneficiaries and insurers’ agents to create a binding contract of insurance on the life of another in direct contravention of the policy addressed *273 by the common law and statutes in imposing requirements for a valid policy. Hunt v. Pyramid Life Ins. Co., 732 S.W.2d 167, 169 (Ark. Ct. App. 1987); Time Ins. Co. v. Lamar, 393 S.E.2d 734, 735-36 (Ga. Ct. App. 1990).
We are persuaded that the better rationale is not to apply equitable estoppel to enforce a life insurance policy issued in contravention of Code § 38.2-302. That statute was not enacted for the protection of the beneficiary but to protect the insured against potentially improper motives of the beneficiary. Thus, contrary to the conclusion reached elsewhere, we conclude that a beneficiary is not entitled to waive the statutory requirements. As we have already stated, applying Code § 38.2-319 to enforce a contract which Code § 38.2-302 renders void ab initio eliminates the very purpose of the statute. To apply equitable estoppel in these circumstances also:
would permit the unreasonable result that [the conduct of an insurance company or its agent] would breathe life into an insurance contract which the General Assembly [for reasons of individual and public protection] intended to have no life, and would frustrate the strong public policy that no contract for life insurance should be made unless the insured applies for or consents in writing to the contract.
Lamar, 393 S.E.2d at 736 (citing Wood, 336 S.E.2d at 812).
Accordingly, we answer the third certified question in the negative.

First certified question answered in the affirmative.

Second certified question answered in the negative.

Third certified question answered in the negative.

 Because the federal district court granted summary judgment in favor of Transamerica Occidental Life Insurance Company, the facts are presented in the light most favorable to Hilfiger. United States v. Leak, 123 F.3d 787, 794 (4th Cir. 1997).