VILLANTI, Judge.
Roi Thi Do and Chau Thai Ha, the plaintiffs below, appeal the trial court’s summary judgment in favor of Lincoln Benefit Life Company. We affirm because there were no material issues of disputed facts precluding summary judgment on the issues of whether the application for life insurance was signed by the insured and whether the insured did not consent in writing to the insurance contract and its terms.
This case arose from Lincoln’s refusal to pay life insurance benefits to Thi Do and Thai Ha. Thi Do was the daughter of Van Do, an elderly Vietnamese man who sought to purchase a replacement life insurance policy in 2008. Thai Ha was Thi Do’s boyfriend; they had a child together. Thi Do and Thai Ha own a business located in the same shopping center as an insurance agent, Mr. Horvath. Thai Ha had used Horvath’s services in the past, so he arranged a meeting between Van Do and Horvath in Horvath’s office to discuss life insurance in November 2008.
Thai Ha, Van Do, Van Do’s wife, and Horvath were present at the meeting, which took place in Horvath’s office. Upon arriving at the meeting, Thai Ha introduced Van Do and his wife as his “mother-in-law” and “father-in-law.” Although the parties dispute exactly what information was exchanged at this meeting, some facts are undisputed: (1) Thai Ha served as translator for Van Do and his wife at the meeting because he had better command of the English language; (2) Van Do and his wife left the meeting without signing an application for life insurance; (3) Van Do did not sign an application at the meeting because he needed time to think about the purchase; and (4) Van Do did not meet with or speak to Horvath again after this meeting.
According to Thai Ha, a week or so after the meeting Van Do called him on the phone and told him to “go ahead and sign for him.” Thai Ha then contacted Horvath and told him that Van Do wanted to purchase the life insurance policy. Horvath filled out the insurance application, gave Thai Ha a copy of the application, and mailed another copy of it to Van Do. It is undisputed that Van Do did not sign, the insurance application. Instead, Thai Ha signed Van Do’s name to the insurance application and delivered it to Horvath *911 without disclosing that he had signed the form. Thai Ha subsequently signed an amendment to the insurance application and other documents related to the application. Thi Do and Thai Ha were the beneficiaries of Van Do’s $500,000 policy.
After receiving the application for insurance, the insurance company conducted a telephonic interview of the person who they thought was the prospective insured, Van Do. Thai Ha posed as Van Do during that interview and answered Lincoln’s questions, never disclosing to Lincoln’s representative that he was not speaking with Van Do himself.
Lincoln also required a paramedical exam of prospective insureds, and Van Do submitted to that exam at his residence on January 6, 2009. The exam was conducted by an independent third party, ExamOne, a subsidiary of Quest Diagnostics. As part of the exam, ExamOne obtained Van Do’s blood and urine samples and he underwent an electrocardiogram. ExamOne required Van Do to sign an ExamOne consent form. It is undisputed that this ExamOne consent form was the only document linked to the insurance application process which Van Do actually signed. The consent form reflected that ExamOne was gathering medical information from Van Do because he had applied for $500,000 in life insurance from Lincoln. The consent form contained no substantive information regarding the terms of the life insurance policy. The form stated, “I voluntarily consent to the testing of my blood, urine and/or oral fluid specimen(s).... If a blood specimen(s) was drawn, I did voluntarily consent to the withdrawal of blood from me by needle or lancet.”
Lincoln issued the life insurance policy in February 2009, and Van Do paid the premiums on the policy via an automatic debit to his bank account. In late 2009, Van Do was diagnosed with terminal cancer and decided to return to his native Vietnam, where he died on March 27, 2010. Because the death occurred during the first two years[1] after issuance of the policy, Lincoln conducted a routine investigation. As a result, Lincoln learned that the signature on the application for insurance was not Van Do’s. Lincoln then rescinded the policy, returned the $18,000 that Van Do had paid in premiums, and declined to pay survivor benefits to Thi Do and Thai Ha.
Thereafter, Thi Do and Thai Ha filed suit against Lincoln asserting claims for declaratory judgment and breach of contract. After discovery, the parties filed motions for summary judgment. Lincoln’s motion argued that the plaintiffs’ recovery under the policy was barred because Van Do did not sign the policy documents and did not provide any other form of written consent to the policy and its terms prior to issuance of the policy. Specifically, Lincoln argued that there had been no compliance with section 627.404(5), Florida Statutes (2011), which required written consent to the insurance contract and its terms. Therefore, Lincoln argued it could rescind the policy. For the same reason, Lincoln argued that Thi Do and Thai Ha’s breach of contract and declaratory judgment claims failed because there was no binding insurance contract.
Thi Do and Thai Ha countered that Van Do had signed the ExamOne consent form and that the form was part of the insurance application. They argued Van Do’s signature on the ExamOne form was tantamount to his signature on the applica *912 tion, thereby satisfying the requirements of section 627.404(5). After a summary judgment hearing, the trial court granted summary judgment in favor of Lincoln, holding:
In their respective arguments, the Parties contested whether VAN DO’s execution/signing of the EXAMONE Form constitutes “written consent” by the insured to legally procure life insurance, regardless if the EXAMONE Form is part or not part of the Application, under section 627.404(5), Florida Statutes (2012)....
[[Image here]]
The Court finds that VAN DO did NOT apply for NOR consented in writing to the Application and Insurance Policy and its terms; consequently the Insurance Policy, a contract of insurance with VAN DO as the primary insured, was NOT effectuated.
This appeal followed.
Thi Do and Thai Ha make two arguments on appeal. First, the trial court erred in finding that Van Do did not consent in writing to the insurance application because the ExamOne paramedical exam consent form signed by Van Do met the statutory written consent requirement. Second, the trial court erred in entering summary judgment based upon the issue of whether Van Do “applied for” the life insurance policy because that issue was not presented to the court for determination. For the reasons explained below, we reject both arguments.
Section 627.404(5), Florida Statutes (2011), reads:
A contract of insurance upon a person ... may not be effectuated unless, on or before the time of entering into such contract, the person insured, having legal capacity to contract, applies for or consents in writing to the contract and its terms....
(Emphasis added.) In concluding that Van Do had not applied for, or consented in writing to, the insurance contact and its terms as required by the statute, the trial court was guided by the case of Hilfiger v. Transamenca Occidental Life Insurance Co., 256 Va. 265, 505 S.E.2d 190 (1998). Hilfiger is, in fact, very similar to this case.
In Hilfiger, Mr. Hilfiger Junior filled out an application for life insurance upon the life of his father, Mr. Hilfiger Senior. Id. at 191. Junior answered all questions on his father’s behalf and signed Senior’s name in the application form. Id. The insurance agent signed the application as a “witness to all signatures.” Id. Senior neither saw the life insurance application nor gave Junior written consent to sign for him. Id. As in this case, Junior claimed that he and Senior had talked about the policy and that Senior gave him oral authorization to take out the policy, which named Junior as beneficiary. Id.
Senior underwent a medical exam in connection with the insurance application. As in this case, during that exam Senior signed a consent form called “PART II of an Application for Insurance to the Trans-america Occidental Life.” Id. The form did not identify the type of insurance applied for, who the proposed beneficiary was, or the amount of coverage sought and, as in this case, Junior also signed an amendment to the insurance policy. Id. Virginia also has a statute similar to Florida’s:
No contract of insurance upon a person shall be made or effectuated unless at the time of the making of the contract the individual insured, being of full age and competent to contract for the insurance contract (i) applies for insurance, or (ii) consents in writing to the insurance contract.
*913 Id. at 192 (emphasis added). When Senior died and the insurance company refused to pay the beneficiary, Junior sued in federal court. Id. The federal court concluded that the policy was void because its execution did not comply with the statute and granted summary judgment in favor of the insurance company. Id. It then certified a question to the Virginia Supreme Court.
In addressing the certified question, the Virginia Supreme Court explained that the purpose of the statute was to require unequivocal evidence that an insured approved of the contract of insurance on his life. Id. The court rejected the argument that Senior’s participation in the medical exam and his signature on the medical exam consent form somehow reflected written consent to the insurance contract. Id. at 193. Although the medical consent form stated that it was a part of an application for insurance, it contained none of the terms of the insurance contract and could not, therefore, be considered as consent in writing to the insurance contract. Id. The Virginia Supreme Court also held that Senior’s oral authorization for his son to take out the policy did not constitute “ ‘applying’ for the policy” as required by the statute because “[i]f oral authorization alone were enough to satisfy the application requirement, the written consent alternative [of the statute] would be rendered superfluous.” Id. at 192.
We agree with the reasoning in Hilfiger and conclude that Van Do’s written consent to the paramedical exam provided by a third party, ExamOne, was not “consent in writing” to the life insurance contract and its terms, as required by section 627.404(5). The consent form lacked critical information such as the name of the beneficiaries, the terms of the insurance contract, pricing, or any other substantive terms of the insurance contract. We also agree with Hilfiger ⅛ reasoning on the second issue and conclude that Van Do’s purported oral authorization of Thai Ha to sign the insurance application on his behalf did not constitute “applying for” the insurance policy as contemplated by section 627.404(5) and, consequently, cannot be the basis of a contract for life insurance.
We reject Appellants’ additional argument that the trial court erred in deciding that Van Do had not “applied for” life insurance because that issue was not presented to the court for resolution. They argue that the only issue before the trial court was whether Van Do had consented in writing to the terms of the policy. In reality, the arguments presented below, at times, mixed the two issues — whether Van Do had applied for or consented in writing to the insurance contract and its terms. For example, Thi Do and Thai Ha’s response to Lincoln’s summary judgment motion specifically argued that the parties had moved for summary judgment only on the issue of whether Van Do had consented in writing to the contract and that “[t]he issue of whether the insured ‘applied for’ the contract is a matter not before this Court on either of the cross motions for partial summary judgment submitted by the parties.” Yet, their response in opposition to summary judgment also argued that the ExamOne medical consent form was part of the insurance application and that Van Do’s signature on the consent form was tantamount to his signature on the insurance application. It invited the court to “conclude that the ExamOne Form was part of the application.” Notably, during the summary judgment hearing the trial court asked, “What it really all still boils down to is whether or not the consent or whatever you call it for the physical applies — amounts to an application for insurance.” (Emphasis added.) Appellants responded, “that’s certainly one *914 component of it,” but that a signature on the application was not the sole means of complying with the statutory requirement because, “[ejven if it’s not part of the application all the statute requires is written consent to the contract.” (Emphasis added.) Consequently, from the record as a whole, we conclude that the issue of whether Van Do had “applied for” insurance was not only intertwined with the issue of whether Van Do had “consented in writing” to the insurance contract and its terms, but was astutely argued.
We also note that several cases have rejected Appellants’ contention that the phrase “in writing” only modifies the word “consent” in section 627.404(5) and that nothing in the statute requires the application for insurance to be in writing. In Alleman v. Lincoln National Life Insurance Co., 686 F.2d 1195 (10th Cir.1981), the insured did not sign the insurance application or consent in writing to the insurance policy before she died. Utah had a statute which provided:
No life or disability insurance contract upon an individual ... shall be made or effectuated unless at the time of the making of the contract the individual insured, being of competent legal capacity to contract, in writing applies therefore or consents thereto....
Id at 1196. The beneficiary in Alleman argued that the statute required the individual to either apply in writing or consent, but that consent did not have to be in writing and could be verbal. Id The court rejected this argument, holding that the “in writing” provision applied to both the words “applies” and “consents” in the statute. Id “To hold that the consent could be verbal would seriously undermine any requirement that the application be in writing.” Id; see also Wren v. N.Y. Life Ins. Co., 493 F.2d 839 (5th Cir.1974) (reaching the same conclusion in a case where a Georgia statute stated that a policy of life insurance would not be effectuated unless the individual insured “applies for or consents in writing thereto”). Here, it is undisputed that Van Do did not sign the insurance application itself. We agree with the reasoning in Alleman that the purpose of section 627.404(5) is to put the issue of the insured’s consent beyond all doubt. To hold that Van Do could have applied for insurance verbally would seriously undermine the purpose of the statute.
At oral argument, Appellants noted the language of section 627.404(6), which reads, “For purposes of this section, the signature of the proposed insured ... on the application for insurance shall constitute his or her written consent.” Their argument seemed to be that section (6) confirmed that one can “apply” for insurance without doing so in writing. Therefore, they argued, the term “in writing” in the statute only modified the word “consent” and any other interpretation made the language in section 627.404(6) redundant. We are not persuaded by Appellants’ argument because sections 627.404(5) and (6) can be reconciled without undermining the purpose of the statute and without deviating from the conclusion that the statute requires an insured to either apply in writing or consent in writing to the insurance contract and its terms.
Whenever possible, courts should give full effect to all statutory provisions and should construe related statutory provisions in harmony with one another. Am. Home Assur. Co. v. Plaza Materials Corp., 908 So.2d 360, 368 (Fla.2005) (relying on Unruh v. State, 669 So.2d 242, 245 (Fla.1996)). There are circumstances when an insured is not the one who applies for insurance, such as the case of “corporate-owned life insurance,” where the employer applies for life insurance on an employee’s *915 life and the employer owns the life insurance. See Craig E. Behrenfeld, Employer-Owned, Life Insurance After The Pension Protection Act of 2006, 88 Fla. Bar. J. 47 (Feb. 2009). The employee upon whom the policy is taken need not sign the insurance application — the employer signs it. But section 627.404(5) still requires the employee to consent in writing to the insurance contract and its terms. See generally id.; Tresa Baidas, “Secret” Life Insurance Triggers Suits; Employees Claim Lack of Consent, The National Law Journal (Feb. 2, 2009). But this case involves an individual policy, not a corporate-owned life insurance policy. Section 627.404(6) simply clarifies that if a person signs the insurance application, that signature constitutes written consent to the insurance contract and its terms. Therefore, under section 627.404(5), the insured has to either apply in writing or consent in writing to the insurance contract and its terms.
It is undisputed that Van Do did not sign the insurance application, its amendment, or any other document related to the application. And other than arguing that the ExamOne consent form was part of the insurance application, Appellants presented nothing disputing the fact that Van Do did not apply in writing for insurance. Therefore, once the trial court correctly rejected Appellants’ arguments regarding the third-party ExamOne consent form, it was clear that there was no material disputed issue of fact or law. Thus, we affirm the trial court’s order granting summary judgment in favor of Lincoln.
Affirmed.
NORTHCUTT and MORRIS, JJ, Concur.

. Lincoln’s policy and practice was to conduct an investigation of a benefits claim when the insured’s death occurred during the initial two-year period after issuance of the life insurance policy.