COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Chaney and Bernhard
Argued at Richmond, Virginia

WILLIAM FISHER, ET AL.

MEMORANDUM OPINION[*] BY
v.          Record No. 1533-24-2            JUDGE RANDOLPH A. BEALES
                                            SEPTEMBER 16, 2025
ELIZABETH J. SMITH

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Claire G. Cardwell, Judge

Jack R. Corkery (John H. Taylor; FloranceGordonBrown, P.C., on
brief), for appellants.

Benjamin P. Kyber (Kevin W. Mottley; The Mottley Law Firm PLC,
on brief), for appellee.

This case concerns a dispute over title to real property and certain retirement accounts.

William Fisher and Daniel Fisher (collectively the "Fishers")—both of whom are the sons of the

late Daniel E. Fisher ("husband") from a previous marriage—appeal from the order of the Circuit

Court of the City of Richmond dismissing their counterclaim and granting summary judgment

for Elizabeth J. Smith ("wife").  The Fishers argue that equitable estoppel required the circuit

court to impose a constructive trust over husband and wife's marital residence and over

husband's retirement accounts following his death.  They also argue that entering summary

judgment for wife and quieting title to the marital residence in wife's favor were inappropriate

because the Fisher sons allege that a material fact remained genuinely in dispute.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

I.  BACKGROUND

"Under well-settled principles, we review the record applying the same standard a trial court must adopt in reviewing a motion for summary judgment, accepting as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Stahl v. Stitt*, 301 Va. 1, 8 (2022) (quoting *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88 (2009)).

In 2008, husband and wife married in Jamaica.  At the time of their marriage, husband was 50 years old, wife was 45 years old, and both parties had prior marriages.  In 2016, husband and wife purchased real property together in the City of Richmond as "tenants by the entirety with the common law right of survivorship."  During their marriage, husband also participated in profit-sharing and stock ownership plans as part of his employment compensation.  In 2017, however, husband and wife separated.  Husband, through counsel, later filed for divorce in 2021. In response, wife, through counsel, filed a counterclaim for divorce in 2022.[1]  A trial eventually was set for October 18, 2023.  A few days before their scheduled trial, counsel for husband and counsel for wife agreed via email to an equal division of the marital shares of the residence and husband's retirement accounts.  They subsequently cancelled the upcoming scheduled trial.

Counsel for husband and counsel for wife then exchanged drafts of a property settlement agreement ("PSA") over email.  Each PSA draft provided that wife would convey her share of the marital residence to husband and that husband would pay wife $15,870.  In addition, wife would receive half of the marital share of husband's retirement accounts, totaling $136,432.50. The latest PSA draft provided that wife would only transfer her share of the marital residence when her name was removed from the mortgage.  However, husband's counsel and wife's

_____

[1] Throughout husband and wife's separation and their pending divorce, husband lived in the marital residence and paid the mortgage, taxes, insurance, utilities, and maintenance. Husband also continued to work and continued to contribute funds to his retirement plans.

counsel had not yet determined who would be responsible for drafting a qualified domestic relations order ("QDRO") for husband's retirement accounts.

On December 9, 2023, before either husband or wife had signed any of the written PSA drafts and before a final decree of divorce had been entered by the circuit court, husband died.[2] Two days later, and seemingly unaware of husband's recent death, counsel for husband and counsel for wife discussed logistics for the QDRO, including who would prepare the QDRO and who would be financially responsible for the QDRO.

After learning of their father's death, the Fishers asserted a claim to husband and wife's marital residence. In response, wife, through counsel, filed a petition to quiet title, asking the circuit court to rule that she was the sole owner of the real property. The Fishers, through counsel, counterclaimed that wife should be equitably estopped from being declared the sole owner of both the marital residence and husband's retirement accounts because she had delayed execution of the PSA. They maintained that their father had died intestate and that they were the legal beneficiaries of his estate. The Fishers proposed that the circuit court impose a constructive trust for their benefit over the marital residence and over husband's retirement accounts in a way that would effectuate the terms of the PSA drafts. They also proposed that wife would receive $15,870 and $136,432.50 as her marital shares of the assets—and that the Fishers would receive title to the marital residence and to the remaining balances of husband's retirement accounts, which were altogether worth more than $500,000. Wife then demurred to the Fishers' counterclaim and also moved for summary judgment on her petition to quiet title.

---

[2] It is well-settled that "a divorce suit abates when one party dies while the suit is pending and before a decree on the merits; this is because the death terminates the marriage, thus rendering the divorce suit moot as it relates to the parties' marital status." *Sprouse v. Griffin*, 250 Va. 46, 50 (1995); *Simpson v. Simpson*, 162 Va. 621, 633 (1934), *cert. denied*, 295 U.S. 735 (1935). It is undisputed in this case that husband died before the divorce had been finalized.

At the hearing on wife's demurrer to the Fishers' counterclaim and on wife's motion for summary judgment on her petition to quiet title, wife's counsel argued that because wife was still husband's spouse at the time of his death and because husband had never designated a beneficiary for his retirement accounts, wife is the sole owner of those accounts. Counsel for wife also argued that wife is the sole owner of the marital residence because, at the time of husband's death, wife and husband owned the home together as tenants by the entirety with the common law right of survivorship. Addressing the PSA drafts, wife's counsel stated:

> At Mr. Fisher's death, no finalized property settlement agreement had been prepared for anyone's signature. The property settlement agreement was never signed; it was never memorialized in a court order; it was never memorialized on the record; no one performed the obligations that would've been imposed by it. Mr. Fisher didn't pay Ms. Smith anything for her interest in the house, he didn't pay anything—he didn't take her name off the mortgage or assume liability for the mortgage on the house, and no qualified domestic relations order was prepared or entered facilitating Ms. Smith's receipt of—of funds from Mr. Fisher's retirement accounts.

In addition, wife's counsel maintained that the Fishers' counterclaim seeking a constructive trust was actually "a request for specific performance of a contract"—and that the circuit court "can't specifically order specific performance of an unenforceable contract." Counsel for wife characterized the Fishers' counterclaim as "a blatant invitation" for the court to "create an exception to the signed writing requirement applicable to marital agreements that the General Assembly has not recognized" under Virginia's Premarital Agreement Act, Code §§ 20-147 to -155. Furthermore, wife's counsel argued, "Equitable estoppel cannot be applied to effectively enforce an agreement that does not satisfy those requirements" for a marital agreement.

In response, counsel for the Fishers argued that the Fishers were "not trying to enforce the agreement as a whole." Rather, "[t]he agreements are merely evidence of what the parties agreed upon and why a constructive trust would be appropriate in these circumstances." The

Fishers' counsel contended that without a constructive trust, wife "would obtain a windfall" of "over $500,000, based merely on Mr. Fisher's death, when that money and proceeds should go to his children. Mr. Fisher would not, I think, want his ex-wife, who he was going through a divorce, close to finalizing a divorce with, to receive all these funds." The Fishers' counsel emphasized that husband "remained in the home" after husband and wife separated and that husband "paid the taxes, the mortgage, utilities, the maintenance, everything that comes from home ownership, with separate funds, after the date of separation."[3]

Following the hearing, and by order entered on August 26, 2024, the circuit court sustained wife's demurrer to the Fishers' counterclaim, finding that the Fishers had not stated a claim for equitable estoppel. The circuit court also granted summary judgment for wife, finding that wife "is the sole legal and equitable title holder" of the marital residence. The circuit court further found that the email correspondence between counsel for husband and counsel for wife "reflect a normal exchange between legal counsel in the process of negotiating a property settlement agreement" and "do not indicate, reflect, or even infer, an unreasonable or unusual delay by either side." By order entered on September 5, 2024, the circuit court dismissed the Fishers' counterclaim with prejudice. The Fishers now appeal to this Court.

## II. ANALYSIS

### A. The Demurrer

On appeal, the Fishers argue:

> The Trial Court committed error as a matter of law in sustaining
> Ms. Smith's Demurrer to the Counterclaim and granting
> Ms. Smith's Motion for Summary Judgment in holding that the
> VPAA bars the application of equitable estoppel and imposition of
> a constructive trust on the subject property, because a constructive
> trust may be imposed even when an agreement out of which it

---

[3] Addressing this point made by counsel for the Fishers, counsel for wife responded by stating, "Since Mr. Fisher died, Ms. Smith has paid the mortgage on the house, and all the taxes on the house. She's taken responsibility for it because it's her house now."

- 5 -

arose is not legally enforceable. The Trial Court further committed an error as a matter of law in its reliance on *Flanary v. Milton*, 263 Va. 20 (2002), because, unlike in *Flanary*, the Fishers did not seek enforcement of the Property Settlement Agreement as a contract and instead seek equitable relief through the imposition of a constructive trust.

"A demurrer tests the legal sufficiency of the facts alleged in a complaint assuming that all facts alleged therein and all inferences fairly drawn from those facts are true." *Givago Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 264 (2021). Under well-settled legal principles, we review a circuit court's decision to sustain a demurrer *de novo*. *Id.* In doing so, we "accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the plaintiff." *Seymour v. Roanoke Cnty. Bd. of Supervisors*, 301 Va. 156, 164 (2022) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)). We also "draw any reasonable inferences arising from the express factual allegations of the complaint in the plaintiff's favor." *Id.*

"The General Assembly has identified agreements between spouses involving rights and obligations arising from the marital relationship as a unique category of agreements subject to specific requirements." *Gaffney v. Gaffney*, 45 Va. App. 655, 666 (2005) (quoting *Flanary v. Milton*, 263 Va. 20, 22 (2002)). "In Virginia, spouses in the process of separating often enter into agreements that they entitle 'property settlement agreements' in order to settle any obligations between them relating to property and support." *Wills v. Wills*, 72 Va. App. 743, 758 (2021) (describing "property settlement agreements" as "marital agreements made in connection with the dissolution of a marriage or a separation").

Code § 20-155, which governs marital agreements, provides:

> Married persons may enter into agreements with each other for the purpose of settling the rights and obligations of either or both of them, to the same extent, with the same effect, and subject to the same conditions, as provided in §§ 20-147 through 20-154 for agreements between prospective spouses, except that such marital

agreements shall become effective immediately upon their execution. If the terms of such agreement are (i) contained in a court order endorsed by counsel or the parties or (ii) recorded and transcribed by a court reporter and affirmed by the parties on the record personally, the agreement is not required to be in writing and is considered to be executed. A reconciliation of the parties after the signing of a separation or property settlement agreement shall abrogate such agreement unless otherwise expressly set forth in the agreement.

Code § 20-149, in turn, requires that a marital agreement "shall be in writing and signed by both parties." Code § 20-149 also states that a marital agreement "shall be enforceable without consideration." The Supreme Court has made clear that "nothing in the language of Code § 20-155 exempts from its application a property or spousal support agreement made in contemplation of resolving a pending divorce action." *Flanary*, 263 Va. at 23. Furthermore, the Supreme Court has expressly recognized that "such an exemption" cannot "be read into the statute" because "[c]ourts are not allowed to write new words into a statute plain on its face." *Id.*

In the case now before this Court, it is undisputed that none of the PSA drafts had been signed by either husband or wife, let alone by both spouses (as plainly required under Code § 20-149). In addition, the record before this Court on appeal establishes that no mutually endorsed court order containing the terms of any draft PSA was presented to the circuit court—and the terms of any draft PSA were not recorded and transcribed by a court reporter and personally affirmed by the parties on the record. Thus, neither exception set forth in Code § 20-155 applies.

Although the Fishers do not contest the lack of an enforceable marital agreement and maintain that they are not trying to enforce the terms of such an agreement, they nevertheless contend that the PSA drafts evidence husband and wife's assent to how the marital residence and husband's retirement accounts should be divided. They argue that the circuit court should have imposed a constructive trust over the marital residence and husband's retirement accounts—and

- 7 -

that the circuit court should have found that wife was estopped from claiming entitlement to the entire interest in the marital home and husband's retirement accounts.

"A constructive trust is a mechanism by which the person holding title to property is subjected to an equitable duty to convey the property to another because allowing the title holder to retain the property would be unjust." *Buchanan v. Buchanan*, 266 Va. 207, 214 (2003); *Leonard v. Counts*, 221 Va. 582, 590 (1980). "In an action in which a constructive trust is imposed, the original transfer is not declared void; rather the title holder is ordered to transfer title of the property to or for the benefit of another." *Buchanan*, 266 Va. at 214. Furthermore, a constructive trust "is an equitable remedy which is created by operation of law to prevent a fraud or injustice," *Bank of Hampton Rds. v. Powell*, 292 Va. 10, 15 (2016), and it "is independent of the intention of the parties," *Buchanan*, 266 Va. at 214. "Constructive trusts have been said to arise through the application of the doctrine of estoppel, or under the broad doctrine that equity regards and treats as done what in good conscience ought to be done." *Sundin v. Klein*, 221 Va. 232, 240 (1980) (quoting *Patterson's Ex'rs v. Patterson*, 144 Va. 113, 123 (1926)).

"Estoppel is an equitable principle that prevents one whose action or inaction has induced reliance by another from benefiting from a change in his position at the expense of the other." *Butler v. Fairfax Cnty. Sch. Bd.*, 291 Va. 32, 40-41 (quoting *Hilfiger v. Transamerica Occidental Life Ins. Co.*, 256 Va. 265, 271-72 (1998)). "To establish a claim of equitable estoppel, without proving fraud, the complainant must show that *he* reasonably relied on the representations and conduct of the defendant, such that *he* changed his position to his detriment." *Id.* at 41 (emphases added) (quoting *Tuomala v. Regent Univ.*, 252 Va. 368, 375 (1996)).

The Fishers can only assert equitable estoppel here if *they* reasonably relied on wife's promises and if *they* changed their position to their detriment. However, the Fishers did not make such a claim. Rather, they argue that *husband* relied on wife's assent to equally divide the

marital shares of the residence and husband's retirement accounts and that *husband* changed *his* own position by agreeing to cancel the divorce hearing and to remove it from the circuit court's docket. Indeed, the Fishers (not husband) are the ones demanding equitable estoppel. However, the Supreme Court has made clear, "The doctrine of equitable estoppel is not available unless *the party advancing the claim* can show that *he* has acted in reliance upon an action or statement of the party *he* seeks to bind." *Tuomala*, 252 Va. at 376 (emphases added); *Khoury v. Cmty. Mem'l Hosp., Inc.*, 203 Va. 236, 243 (1962). Although the Fishers allege a detriment from the decreased inheritance assets, they simply failed to plead any acts that *they* took in reliance on wife's anticipated PSA with husband. Therefore, under these circumstances, the circuit court did not err in finding that the Fishers failed to state a valid equitable estoppel claim.

Even if equitable estoppel did apply in this case, imposing a constructive trust, however, would not have been appropriate. "In exercising its equitable powers, a trial court cannot permit what this Court and the General Assembly have said is unlawful." *Frank Shop v. Crown Cent. Petroleum Corp.*, 264 Va. 1, 6 (2002). For example, the Supreme Court has held that applying equitable estoppel to an insurance contract that was unenforceable by statute

> would permit the unreasonable result that [the conduct of an insurance company or its agent] would breathe life into an insurance contract which the General Assembly [for reasons of individual and public protection] intended to have no life, and would frustrate the strong public policy that no contract for life insurance should be made unless the insured applies for or consents in writing to the contract.

*Hilfiger*, 256 Va. at 273 (alterations in original) (quoting *Time Ins. Co. v. Lamar*, 393 S.E.2d 734, 736 (Ga. Ct. App. 1990)). Applying the Supreme Court's rationale from its decision in *Hilfiger* to the PSA drafts at issue here, it follows that imposing the Fishers' proposed constructive trust would "breathe life" into an unsigned and unenforceable marital agreement that the General Assembly clearly "intended to have no life." *Id.*; *Flanary*, 263 Va. at 22 ("The

General Assembly has identified agreements between spouses involving rights and obligations arising from the marital relationship as a unique category of agreements subject to specific requirements."); Code §§ 20-149 and 20-155. Therefore, for all of these reasons, the circuit court did not err in sustaining wife's demurrer and in dismissing the Fishers' counterclaim.

### B. Summary Judgment

The Fishers also argue:

> The Trial Court erred in granting Ms. Smith's Motion for Summary Judgment and finding no dispute of material fact by failing to consider any evidence outside of Exhibits D-L and disregarding the material fact at issue as to whether Ms. Smith acted with questionable means to delay execution of the Property Settlement Agreement.

It is well-established that summary judgment "shall not be entered unless no material fact is genuinely in dispute on a controlling issue or issues and the moving party is entitled to such judgment as a matter of law." *Oreze Healthcare LLC v. E. Shore Cmty. Servs. Bd.*, 302 Va. 225, 230 (2023) (quoting *La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 294 Va. 243, 253 (2017)); *Mount Aldie, LLC v. Land Trust of Va., Inc.*, 293 Va. 190, 196 (2017). The Supreme Court has stated that "immaterial facts genuinely in dispute or material facts not genuinely in dispute do not preclude the entry of summary judgment." *AlBritton v. Commonwealth*, 299 Va. 392, 403 (2021). "A fact is material to a party's position only if it can affect the outcome of the case." *Brizzolara v. Sherwood Mem'l Park, Inc.*, 274 Va. 164, 188 (2007).

"Unlike a mere joint tenancy with a right of survivorship, a tenancy by the entirety 'may be severed only by mutual consent of the spouses or by divorce.'" *Jones v. Phillips*, 299 Va. 285, 307-08 (quoting *In re Bunker*, 312 F.3d 145, 151 (4th Cir. 2002)). Thus, "so long as the property remains held by them as tenants by the entirety, upon the death of one spouse, ownership of the property will pass to the other in fee simple outside the estate of the deceased spouse." *Evans v. Evans*, 290 Va. 176, 184 (2015).

It is undisputed that husband and wife owned the marital residence as tenants by the entirety with common law rights of survivorship—and that husband and wife had not severed that ownership by mutual consent. When husband died, he and wife were still legally married, so full ownership of the marital residence passed to wife by operation of law. Thus, the circuit court did not err in granting wife's motion for summary judgment on her petition to quiet title because she was entitled by law to sole and equitable title to the marital residence.

To the extent that the Fishers contend that wife's alleged delay in executing the PSA was a material fact that remained genuinely in dispute, there is no statutory authority or case law supporting the Fishers' claim that a delay in executing a marital agreement defeats the ownership interest of the surviving tenant by the entirety with rights of survivorship when one tenant dies. Furthermore, Code § 20-155 does not transform a draft marital agreement into a final, enforceable marital agreement because of one spouse's alleged delay in executing that agreement. Evidence of wife's purported delay in executing the PSA is not a material fact precluding summary judgment because it did not "affect the outcome of the case" as the way that the marital residence was titled would cause it to pass directly to the surviving spouse as long as they were still married at the time of husband's death—and they had not signed a property settlement agreement stating that they had agreed to otherwise handle the ownership of the marital residence. *Brizzolara*, 274 Va. at 188. Thus, for all of these reasons and given that there were no *material* facts genuinely in dispute, the circuit court did not err in granting summary judgment for wife.

### III. CONCLUSION

The circuit court did not err in sustaining wife's demurrer and in dismissing the Fishers' counterclaim because the Fishers failed to state a valid equitable estoppel claim. The circuit court also did not err in granting wife's motion for summary judgment because she was entitled

as a matter of law to sole and equitable title to the marital residence. Consequently, we affirm the judgment of the Circuit Court of the City of Richmond.

*Affirmed.*